(88 App. Div. 457.)

DEERING v. SCHREYER et al.

(Supreme Court, Appellate Division, First Department. December 11, 1903.)

1. EVIDENCE—DECEASED WITNESS—TESTIMONY ON FORMER TRIAL.
    Code Civ. Proc. § 830, as amended by Laws 1899, p. 762, c. 352, author-
izing the testimony of a witness given on the trial of an action or hearing
of a proceeding to be read on a subsequent trial or hearing of the same
subject-matter between the same parties—witness having died in the
meantime—does not authorize testimony taken in a proceeding in which
the court has no jurisdiction to adjudge as to the subject-matter, and in
which defendant takes objection to the jurisdiction, though afterwards
cross-examining witness, to be used in a subsequent action between the
parties.

Appeal from Special Term, New York County.

Action by James A. Deering against John Schreyer and others.
From a judgment for plaintiff, defendant Schreyer appeals. Re-
versed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON,
INGRAHAM, and LAUGHLIN, JJ.

Alexander Thain, for appellant.
Clarence L. Barber, for respondent.

PATTERSON, J. This action has been tried twice. The de-
tails of the controversy between the parties are so fully stated in
former opinions of this court (Matter of Lexington Avenue, 30
App. Div. 602, 52 N. Y. Supp. 203; Matter of Lexington Avenue,
No. 2, 30 App. Div. 609, 52 N. Y. Supp. 342; Deering v. Schreyer,
58 App. Div. 322, 68 N. Y. Supp. 1015) that it is only necessary
now to refer to them generally in connection with the contested
issue of fact arising upon the second trial.

The plaintiff, an attorney at law, and the defendant Schreyer en-
tered into an agreement by which the latter retained the former to
render professional services in obtaining compensation for loss and
damage sustained or which might be sustained by Schreyer for land
taken from him in a proceeding for the opening of Lexington ave-
nue, in the city of New York. The agreement signed by Schreyer
contains the following clause:

"And in consideration of his professional services, do hereby promise, as-
sign and agree to pay to the said Deering a sum equal to fifty per cent. of
whatever sum shall be allowed, recovered or confirmed on account of the said
loss and damage; it being agreed and understood that in case of no recovery
and allowance the said Deering shall receive nothing."

Prior to the making of this agreement, commissioners for open-
ing Lexington avenue had made an award of $4 to Schreyer. That
award had been confirmed. Under his employment, Mr. Deering
succeeded in having the report of the commissioners awarding the
$4 vacated, and new commissioners of estimate and assessment were
appointed. In proceedings before such new commissioners, the
plaintiff rendered services which resulted in an award to the defend-
ant Schreyer of $22,500 for the lands taken from him in the pro-

¶ 1. See Evidence, vol. 20, Cent. Dig. § 2410.

ceeding. Thereupon the plaintiff claimed to be entitled to one-half of the amount of the award. The defendant Schreyer denied the plaintiff's right, and resisted the claim. Mr. Deering made a special application to the court in the street opening proceeding, and asked that his lien upon the award for his compensation be determined, and that his claim be paid from the amount of the award then in the hands of the chamberlain of the city of New York. That application was granted at the Special Term, but upon appeal the order was reversed (30 App. Div. 602, 52 N. Y. Supp. 203); this court holding that an attorney rendering services in obtaining an award for an owner of property taken by the city of New York in a street opening proceeding was not entitled to have his claim for compensation, under an agreement with the owner, determined upon an application by a petition in that proceeding, and that section 66 of the Code of Civil Procedure, as it then stood, relating to an attorney's lien for services, did not apply to a special proceeding, as it now does by an amendment of 1899 (Laws 1899, p. 80, c. 67). It was intimated that the attorney could maintain an action in equity against the city and against his client to liquidate his demand, and to secure the payment of his share of the award by the city. That decision of this court was sustained by the Court of Appeals. 157 N. Y. 678, 51 N. E. 1092. Subsequently, following the intimation of this court, this action was begun in equity against Schreyer and the city of New York and William J. Fields, who claimed, as the assignee of a mortgage upon the land taken in the street opening proceeding, to be entitled to a portion of the award. Issue being joined, the cause came to trial, and it was adjudged that the plaintiff was entitled to recover one-half the award as made by the commissioners. The defendants Schreyer and Fields contended, among other things, that, assuming the contract to have been made as claimed by the plaintiff, the amount to which he was entitled must be ascertained after the deduction of the amount of a mortgage which they asserted existed upon the property, and of certain taxes claimed by the city. The trial court excluded evidence concerning the mortgage. On appeal to this court the judgment of the Special Term was affirmed, but on appeal to the Court of Appeals it was reversed (171 N. Y. 451, 64 N. E. 179), and a new trial was ordered; that court holding that taxes and the amount of a mortgage which the owner was under no personal obligation to pay, but which the law required should be satisfied out of the award for land taken in the street opening proceeding, must be deducted from the gross award before the amount to which the attorney was entitled under the agreement with his client could be ascertained. When the cause came back for a new trial, the status of the mortgage was the substantial matter to be determined, and at the trial no question was raised either as to the fact of the agreement having been entered into between Schreyer and the plaintiff, or its interpretation. No question arises on this appeal as to taxes. As to the mortgage, the defendants Schreyer and Fields claimed that it was a valid outstanding incumbrance on the land taken in the street opening proceeding, and that it had been such from the date at which the defendant

Schreyer acquired the property by purchase from his grantor, Molloy, which was in the year 1884. The premises were then subject to a mortgage for $6,000 held by one John Ross. On November 6, 1884, Ross assigned it to Stephen H. Martling, a son-in-law of Schreyer, and Schreyer is said to have guarantied payment of the same. In October, 1888, Schreyer paid $2,000 on account of the mortgage. In May, 1899, he paid to one A. H. Wagner, the attorney for Martling, a balance of $4,000; and the mortgage was assigned by Martling, at Schreyer's request, to the defendant Fields, who was also a son-in-law of Schreyer. The plaintiff was employed by Schreyer to render the service for which compensation is sought in this action in October, 1900, and after the payments were made.

The aspect in which the case would be, and was, presented on the new trial, was considered in the opinion of the Court of Appeals. The plaintiff, by the terms of his agreement with Schreyer, was entitled to recover only one-half of so much of the award as was made to Schreyer for his interest in the land taken; and that was to be determined after the deduction of the mortgage, if it were a lien, and also if Schreyer were under no personal obligation to pay it. The plaintiff contended that the mortgage had been paid, and was kept alive by pretended assignments, and that Schreyer had assumed payment, and that, "although kept alive in form, it had no substance, and was in fact no lien." The evidence in the record before the Court of Appeals was not sufficient to justify a finding in favor of the plaintiff on those issues, and the court remarked that:

"The issues as to the assumption of the mortgage by Schreyer, the payment thereof by him, and its assignment for an ulterior purpose, although tendered by the complaint and met by the answer, were neither tried nor determined, for the trial justice regarded them as immaterial. Those issues can be disposed of on the new trial, which we deem it our duty to order," etc.

On the trial now under review those issues were tried, and the court, among the grounds on which it found in favor of the plaintiff, states the following:

"When title to the lots taken by the city for which the award was made was acquired by the defendant Schreyer, in 1884, they were subject to a mortgage for $6,000. This was assigned in November, 1884, by the mortgagee, to Stephen H. Martling; and with the instrument of assignment there was delivered to him a written guaranty of payment, executed by defendant Schreyer. In October, 1888, the defendant Schreyer paid to said assignee $2,000 of the principal, and in May, 1899, Schreyer paid the remaining $4,000 of the principal, together with all accrued interest. Instead of having said mortgage satisfied, defendant Schreyer procured an instrument from said assignee, Stephen H. Martling, by which, in form, he assigned said mortgage to defendant Fields; but said Fields paid no consideration for said assignment, and obtained no interest in said mortgage, nor in the sum secured thereby. Said assignment was executed solely at the request of defendant Schreyer, and exclusively for the purpose of keeping said mortgage on foot during the pendency of the condemnation proceedings described in the amended complaint, and for some real or fancied advantage to accrue therefrom in connection with said proceedings. Defendant Fields was informed by defendant Schreyer of said condemnation proceedings, and of the services rendered by the plaintiff under such retainer; but he neither appeared therein, nor made any claim to any part of the compensation to be paid, and the award was made to defendant Schreyer as sole owner."

The view of the evidence entertained by the court below was that, as matter of fact, Schreyer had guarantied the mortgage, so that he became personally liable for the amount thereof, and that he did pay the same before his retainer of the plaintiff, from which it would necessarily follow that Schreyer received the benefit of the whole award made by the commissioners, and the plaintiff would be entitled to one-half thereof under his contract. There is abundant evidence to sustain what may be called the finding of the court at Special Term with respect to Schreyer's acts in connection with this mortgage, and his relation thereto, if all evidence upon which that finding is based were competent and admissible. In the street opening proceedings, Schreyer made affidavits in which are contained statements respecting the mortgage, which, unexplained, indicate that the mortgage was guarantied by him, and was paid by him, and was transferred merely by colorable assignments at his procurement. In an affidavit made in February, 1891, he says:

"I was compelled to pay the mortgagee the amount of said mortgage, $6,000, and, instead of having the same discharged of record, owing to the still outstanding claim on my part to compensation against the city, and for reasons connected therewith, an assignment thereof on such payment was made to my son-in-law Mr. Fields."

In an affidavit sworn to on October 24, 1890, he says:

"The said parcel of land belongs to me absolutely. The said premises were subject to a mortgage of $6,000, which, since the consummation of the report herein, I have been obliged to provide for."

In an affidavit made on June 11, 1892, he says:

"Subsequently, to the consummation [sic] of the report herein, I was compelled to pay the mortgagee the amount of said mortgage, $6,000; and, instead of having the same discharged of record, owing to the still outstanding claim on my part to compensation against the city, and for reasons connected therewith, an assignment thereof on said payment was made to my son-in-law Mr. Fields. When I took title to the said premises, I verily believed and was advised that I received a full and absolute title thereto."

On his examination as a witness in his own behalf in the last trial of this case, Schreyer does not deny having made the affidavits in which these statements are contained, but he seeks to explain them by saying that the payments were not made with his own money; that he never paid anything out of his own funds; that he paid to the mortgagee the amount of the mortgage with borrowed money; that he did not intend to have the mortgage satisfied, but, for reasons sufficient to himself, had it assigned to his son-in-law; and that it was true that since the confirmation of the report he was obliged to provide for the $6,000 mortgage. He also states that he never guarantied the payment of the mortgage, and that he did not notice when the affidavit of February, 1901, was made, that it contained a statement that he had given that guaranty. The impression derived from the whole of Schreyer's evidence is that, while the amount of the mortgage of $6,000 was paid by him, yet it was so paid with borrowed money (ultimately received from the defendant Fields), and that although the original mortgagee, Ross, was actually paid amount of the mortgage, yet it was kept alive by transfer in order to secure those who loaned the money. The testimony of the de-

fendant Fields, although unsatisfactory in many respects, tends to show that he loaned money to Schreyer in order to pay Martling, the first assignee of the mortgage. from Ross. All of this testimony is important, because by the judgment from which the appeal is taken it is determined that the defendant Fields, at the time of the confirmation of the award, had not, and has not now, any actual or real interest in the award, as assignee of the mortgage.

If the proof on the subject had stopped here, and the court had found in favor of the plaintiff, rejecting the testimony of Schreyer and Fields as unworthy of belief, we might have found no difficulty in sustaining the judgment; but the plaintiff was allowed to introduce evidence which may have been, and in its nature must have been, very influential with the court in inducing it to reach the conclusion at which it arrived. That evidence consists of testimony given by A. H. Wagner in the special proceeding instituted by Mr. Deering to have his lien determined and charged upon the award. Mr. Wagner died before this present action was tried. The testimony he gave in the special proceeding was offered in evidence, and it was claimed to be admissible under the provisions of section 830 of the Code of Civil Procedure. It was admitted over exception; and the question arises as to its competency as proof on the trial of this action. Section 830 of the Code was amended in the year 1899 (Laws 1899, p. 762, c. 352) so as to read, so far as it relates to this question, as follows:

"Where a party or witness has died or become insane since the trial of an action, or the hearing upon the merits of a special proceeding, the testimony of the decedent or insane person, or of any person who is rendered incompetent by the provisions of the last section [section 829], taken or read in evidence at the former trial or hearing, may be given or read in evidence at a new trial or hearing, or upon any subsequent trial or hearing, of the same subject matter in an action or special proceeding between the same parties who were parties to such former trial or hearing, or their legal representatives, by either party to such new trial or hearing, or to such subsequent action or special proceeding, subject to any other legal objection to the competency of the witness or to any other legal objection to his testimony or any question put to him."

Prior to the amendment of 1899, the right to read the testimony of a deceased party or witness taken on the former trial was confined by the section to a new trial or hearing of the same action or special proceeding in which the testimony was given. People ex rel. Byrne v. Brugman, 3 App. Div. 156, 38 N. Y. Supp. 193. Its scope was enlarged by the amendment of 1899 to extend the right to resort to such testimony to another and independent action or special proceeding between the same parties, where the subject-matter of the new action or proceeding was identical with that in which the testimony of the deceased party or witness was given. As the section stood before the amendment, it did not create a new rule 'of evidence, but was only declaratory of an existing exception to the general rule against the allowance of hearsay evidence. Greenleaf, in his work on Evidence (volume 1, § 163), says:

"In the fifth class of exceptions to the rule rejecting hearsay evidence may be included the testimony of a deceased witness given in a former ac-

tion between the same parties, though this might, perhaps, with equal propriety, be considered under the rule itself. This testimony may have been given either orally in court, or in written depositions taken out of court. * * * The chief reasons for the exclusion of hearsay evidence are the want of the sanction of an oath and of any opportunity to cross-examine the witness. But where the testimony was given under oath in a judicial proceeding, in which the adverse litigant was a party, and where he had the power to cross-examine, and was legally called upon so to do, the great and ordinary test of truth being no longer wanting, the testimony so given is admitted, and after the decease of the witness, in any subsequent suit between the same parties."

The objection to the allowance of the evidence of the deceased witness in this case is placed upon the ground that there never was a judicial proceeding in which it was competent to take the testimony of Mr. Wagner; that the special proceeding in which he was examined as a witness was no proceeding at all, in a legal or judicial sense, because it has been determined that the court had no jurisdiction whatever to entertain that proceeding; and that, from beginning to end, it and everything connected with it was absolutely void. Such was in fact the determination of this court, affirmed by the Court of Appeals. Matter of Lexington Avenue, No. 1, 30 App. Div. 602, 52 N. Y. Supp. 203. At the hearing of that proceeding, Schreyer specifically took objection to the court inquiring into any matter before the referee, save as to taxes, on the ground that the claim of Deering should be determined in an action, and not in a special proceeding upon a reference. This court held that that objection should have been sustained, and that the court had no power or jurisdiction, as distinguished from power, to entertain the proceeding. The language of the opinion is:

"When the proceedings were commenced, the court was without jurisdiction in the special proceeding to direct the city to pay over to Schreyer or the petitioner the amount of this award;" and "we know of no case in which the court has entertained such a proceeding summarily to require the client to pay to an attorney the amount which the attorney claims is due to him from his client for services rendered. Schreyer had the right to have the question of the attorney's lien determined by the methods prescribed by law"; and, "while the court could have protected the rights of the attorney by such action as we have suggested, it had no jurisdiction to determine the amount of Schreyer's obligation to the petitioner in such a proceeding as was instituted."

Without considering whether the subject-matter of the special proceeding and of this action is the same, the question arises whether, when testimony is taken in an action or proceeding in which the court has no jurisdiction whatever to adjudge as to the subject-matter, that testimony—the witness giving it being dead—can be used in another and entirely independent action or proceeding, of which the court has jurisdiction. As the Code of Civil Procedure has made no absolutely new rule in this regard, but only, in one direction, extended and amplified an old one, its provision, while it may be liberally construed, cannot be regarded as altering fundamental conditions upon which the exception to the rule as to hearsay evidence was applied. The ground upon which the exception stands is that, in an authorized action or proceeding, testimony being given under the solemnity of an oath, where the witness was or might have been

cross-examined, the probabilities of the truth having been told are so great as to justify the resort to that testimony when the witness has died or become insane since the former trial. As stated by Greenleaf, the evidence is admitted where it was given under oath in a judicial proceeding in which the adverse litigant was a party, and where he had the power to cross-examine, and was legally called upon so to do. It is immaterial to the admission of the evidence whether the party actually cross-examined, or did not cross-examine, if he were bound so to do. Bradley v. Mirick, 91 N. Y. 293. The exception must have general application. It cannot depend upon whether the party has examined or cross-examined the witness, if the court had no jurisdiction to entertain the action or proceeding in which the testimony was given. A party summoned to answer in an action or proceeding in which the court has no jurisdiction has the legal right to take his objection to jurisdiction, and pay no further attention to that action or proceeding. He may stand upon his legal rights. He is not bound to cross-examine. He is not "legally called upon so to do." We are not able to perceive that if he takes the objection to jurisdiction, and then cross-examines a witness, he is precluded from afterwards objecting that the action or proceeding in which the examination was had was utterly void.

We are of opinion that the provision of the Code under consideration applies only to the testimony of a deceased or insane witness taken in an action or proceeding of which the court had jurisdiction, and that that provision is not to be extended by judicial legislation. If it applies to a case in which a party has cross-examined the deceased witness, it would apply equally to a case in which a party did not cross-examine a witness, even when he was under no obligation and was not legally called upon so to do, if he had an opportunity to cross-examine. We think the testimony of Mr. Wagner was incompetent, and, as it may have had a direct influence upon the mind of the trial judge in his determination of the cause, the judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.

INGRAHAM, J. I concur with Mr. Justice PATTERSON, and I also think the allowance of interest was not justified. The fund was in court, and the plaintiff is not entitled to interest on the amount due him, except such interest as has been earned by the fund in court. The defendant has received no part of the award, except the amount paid to Fields, and to that amount he was entitled. The question as to who was entitled to the balance in the hands of the city, and afterwards paid into court, was the question involved, and it was error to charge the defendant interest on the amount deposited in court, the title to which was to be determined by the judgment.