SAMUEL T. SHAW et al., Individually and as Executors and Trustees under the Will of JULIA A. SHAW, Deceased, Respondents, *v.* THE NEW YORK ELEVATED RAILROAD COM- PANY et al., Appellants.

1. ELEVATED RAILROAD — INEFFECTIVE CONSENT TO CONSTRUCTION OF ROAD. A statement by an abutting owner, "I am in favor of an ele- vated road over the middle of the street but not on the walk," written by him upon a paper circulated on behalf of the railroad company amongst property owners, underneath a heading which, if subscribed without any qualifications or limitations, would have amounted to and constituted a general consent to the construction of the road, assuming that it was a consent to anything, cannot be construed as cutting off a claim for dam- ages for the subsequent construction and operation of the road upon the sidewalk.

2. EVIDENCE OF COMPANY'S FAILURE TO ACT UPON ALLEGED CONSENT. An application thereafter by the railroad company to the proper authori- ties for permission to construct a road, including such owner as among those refusing to consent to its construction, is evidence justifying a find- ing in an action for damages that the company did not act upon or accept the alleged consent.

3. CONSENT NO BAR TO ACTION FOR DAMAGES BY SUBSEQUENT GRANTEE WITHOUT NOTICE. Assuming that the statement was a consent to the construction of the road, in the absence of evidence that it was recorded or notice thereof given to a subsequent grantee of the premises who took title before the commencement of the construction of the road, it would not bar his claim for damages.

4. TESTIMONY OF DECEASED WITNESS READ ON NEW TRIAL. The evidence of a deceased witness given on the trial of an action for dam- ages brought against the original company, may be read on a new trial of the action against the lessee brought in as defendant. It is unnecessary

to determine whether section 830 of the Code of Civil Procedure, as amended by chapter 352 of the Laws of 1899, limiting such evidence to a new trial between the same parties or "their legal representatives," would permit the same to be read against a lessee since the common-law rule permitting such evidence to be read as between the original parties or their privies stands in the absence of an express or necessarily implied repeal.

5. WHEN ERROR IN ADMISSION OF EVIDENCE AS TO VALUE IS CURED. The admission of evidence of experts as to the value and rental value of an entire block as a basis for fixing the value and rental value of a separate piece therein, constitutes error, but is cured when on cross-examination they testify as to the separate values of the various lots constituting the entire parcel, so that it is possible for the trial court to apportion the evidence of aggregate value and apply the proper figures to the parcel in question.

6. EVIDENCE OF GENERAL APPRECIATION OF VALUES IN OTHER LOCALITIES. Testimony as to what the value of property would have been if a railroad had not been built is inadmissible, but a witness may state that there had been a general appreciation in real estate values in other localities and that except for the construction of the road the same general course in values would have prevailed in the locality in question.

*Shaw* v. *N. Y. El. R. R. Co.*, 110 App. Div. 892, affirmed.

(Argued December 17, 1906; decided January 15, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 11, 1906, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John L. Cadwalader, Howard Mc Williams* and *Charles A. Gardiner* for appellants. The paper signed by James E. Shaw, purporting to be a consent to the construction and operation of the elevated railroad in Forty-second street, is a valid defense to the first cause of action. ( *White* v. *El. R. R. Co.*, 139 N. Y. 19; *Heimburg* v. *El. R. R. Co.*, 162 N. Y. 352; *Bellew* v. *N. Y., W. & C. T. Co.*, 47 App. Div. 447; *Thompson* v. *S. Ry. Co.*, 178 N. Y. 102; *Adee* v. *N. E. R. R. Co.*, 65 App. Div. 529; *Herzog* v. *R. R. Co.*, 76 Hun, 485; *Ward* v. *R. R.*

*Co.*, 152 N. Y. 39 ; *Mitchell* v. *R. R. Co.*, 134 N. Y. 11 ; *Sterry* v. *Arden*, 1 Johns. Ch. 267 ; *Hawley* v. *Cramer*, 4 Cow. 717.) The trial court committed reversible errors in rulings on questions of evidence. (*Jamieson* v. *N. Y. E. R. R. Co.*, 147 N. Y. 322 ; *Witmark* v. *El. R. R. Co.*, 149 N. Y. 393 ; *Robinson* v. *El. R. R. Co.*, 175 N. Y. 219 ; *Levin Case*, 165 N. Y. 577 ; *Boetzkes Case*, 1 App. Div. 526 ; *Innes Case*, 3 App. Div. 541 ; *Stuyvesant Case*, 4 App. Div. 159 ; *O'Sullivan Case*, 20 App. Div. 384 ; *Roberts Case*, 128 N. Y. 455 ; *Doyle Case*, 128 N. Y. 488.) The learned trial court erred in admitting the testimony of a deceased real estate expert witness taken on a former trial. (Code Civ. Pro. § 830 ; *Wallach* v. *M. Ry. Co.*, 105 App. Div. 422 ; *Varnum* v. *Hart*, 47 Hun, 18 ; *Young* v. *Valentine*, 177 N. Y. 347 ; *Jackson* v. *Lawson*, 15 Johns. 18 ; *Moorehouse* v. *Moorehouse*, 11 Civ. Pro. Rep. 20 ; *Gunby* v. *M. S. Ry. Co.*, 30 Civ. Pro. Rep. 217.)

*W. G. Peckham, M. S. Isaacs* and *I. S. Isaacs* for respondents. The alleged consent was either a declination or a limitation, subject to a condition or expression of opinion. Moreover, there was no meeting of minds on the paper in evidence. (*Koehler* v. *El. R. R. Co.*, 9 App. Div. 451 ; *Roberts* v. *El. R. R. Co.*, 155 N. Y. 38 ; *Matter of N. Y. El. R. R. Co.*, 70 N. Y. 353 ; *Murdock* v. *R. R. Co.*, 73 N. Y. 583 ; *Kornder* v. *B. El. R. R. Co.*, 41 App. Div. 358.) Conditional consents are invalid, and such informal papers must be construed, *strictissimi juris*, before they can operate as defeasances of realty. (*Roberts* v. *El. R. R. Co.*, 155 N. Y. 38 ; *Foote* v. *El. R. R. Co.*, 147 N. Y. 370 ; *Watson* v. *El. R. R. Co.*, 29 N. Y. S. R. 513 ; *Snell* v. *Leavitt*, 110 N. Y. 604.) The dead expert's testimony was properly admitted in evidence. (*N. Y. M. L. Ins. Co.* v. *Armstrong*, 117 U. S. 591 ; 172 N. Y. 152 ; *Young* v. *Valentine*, 177 N. Y. 337 ; McAdam on Landl. & Tenant, 146 ; *P., etc., R. R. Co.* v. *Howard*, 13 How. [U. S.] 307 ; *Moorehouse* v. *Moorehouse*, 11 Civ. Pro. Rep. 33 ; *M. S. Ry. Co.* v. *Gunby*, 30 Civ. Pro. Rep. 217 ; *Wallach* v. *El. R. R. Co.*, 105 App. Div. 424.)

Hiscock, J.  This action was brought in the usual form to enjoin the operation of an elevated road originally constructed by the New York Elevated Railroad Company and thereafter at different periods leased and operated by the other defendants, respectively, through Forty-second street in front of plaintiffs' premises, unless compensation should be made for the damages claimed to have been caused to the fee and rental value of said premises through impairment of the various easements appurtenant to said property.

The entire property in question has a frontage upon Forty-second street of 130 feet and is bounded upon the westerly side by Park avenue.  It originally consisted of two parcels, one situate at the corner of Park avenue and Forty-second street, having a frontage upon the latter of 64 feet, and the other parcel adjoining the first one upon the east and having a frontage upon Forty-second street of 66 feet.  The first of these parcels was referred to upon the trial as the " Westchester House " piece.  These two parcels in turn are part of a larger parcel extending from Forty-second street through to Forty-first street, and in its entirety known as the Grand Union Hotel, the frontage upon Park avenue and consequent depth of the entire parcel being 197 feet 6½ inches.

The trial court awarded as fee and annual rental damages in the case of the parcel first mentioned $40,500 and $2,400, respectively, and for similar damages in the case of the second parcel $37,000 and $2,200, respectively.  It was conceded and ruled upon the trial that no damages should be allowed for damages to the southerly half of the entire piece of property fronting upon Forty-first street.

Upon a former trial, fee and rental damages were allowed in the case of the corner parcel in the sums, respectively, of $25,000 and $1,500, and no damages were allowed in the case of the second or interior parcel, upon the ground that one James E. Shaw, the original owner of the property, had consented to the construction of the railroad.

Many exceptions were taken to the rulings of the trial court, which are argued upon this appeal, and such of them as seem to require it will be considered in order.

*First.* In accordance with the decision of the learned Appellate Division upon the former appeal, the trial court rejected defendants' claim that plaintiffs' predecessor in title had consented to the construction of the road as to the interior parcel of land, so as to bar them from recovering for damages thereto, and I think this ruling was correct for several reasons.

(1) The alleged consent consisted in James E. Shaw, being then the owner of the property, writing the words "I am in favor of an elevated road over the middle of the street, but not on the walk," upon a paper circulated in behalf of the railroad company amongst property owners, underneath a heading which, if subscribed without any qualifications or limitations, would have amounted to and constituted a general consent to the construction of the road.

It perhaps may be doubted whether the language employed amounted to a consent to anything, or was more than a tentative expression of what the property owner would favor, subsequently to be evidenced by a more formal declaration. Assuming, however, that it was a consent, it was certainly a qualified and conditional one, which, if accepted, must be complied with. The trial court has found that there was no compliance with such consent, and that in violation thereof defendant "built its structure upon both sidewalks and there maintained it for many years, and still maintains it on the north sidewalk of 42nd Street, and the signature of Shaw as signed was in no sense a consent to the various structures built and various uses made of the street by the railroad." The defendants cannot claim immunity by reason of a proffered consent, with the terms of which they refused to comply.

(2) Regarding the words signed by Shaw as a conditional or qualified consent, the railroad had a perfect right to reject it and refuse to act upon it or be bound by it. As already suggested, if it did accept it, it could be compelled to comply with its terms, which evidently were objectionable, and rather than do this it was at liberty to treat Shaw as having refused to give a consent, and to proceed upon the ground that he was

opposed to the construction of the road. This is just what it did do. The trial court has found that " The railroad did not act upon the faith of the above (alleged consent) in the construction of the road. The road accepted the paper as not a consent, and later treated the paper as not a consent." The evidence in support of this finding, and to the criticisms upon which reference will hereafter be made, is to the effect that subsequently the railroad made application to the proper Board for authority to construct its road through Forty-second street, and upon such application, and in order to lay the foundation therefor, included Shaw as amongst those who had refused to consent to the construction of the road. Having thus rejected this writing and having utilized it in adverse proceedings as a refusal, the road was not at liberty upon this trial to reverse its position and claim a consent. It seems to me that the facts as presented upon this appeal are clearly to be differentiated from those upon which was based the decision in *Paige* v. *Schenectady Railway Co.* (178 N. Y. 102), which is relied upon by appellants as establishing the doctrine that a consent given to and accepted by a railroad company for the construction of its road cannot thereafter be waived or surrendered without the consent of the stockholders and other parties interested. This doctrine was entirely applicable to the facts appearing in the *Paige* case because there there was no question but that the property owner had given a consent which had been accepted and acted upon by the railroad in the construction of its tracks and the corporation had become vested with rights based upon such consent which naturally and logically could not be voluntarily given up by the receiver of the road. In this case, if I am right, the corporation utterly refused to accept the proffered consent and no question can arise over a surrender voluntarily and without consideration of some right which it has never accepted and with which it has never become vested.

The learned counsel for the appellants has criticised certain evidence upon which was based, as he assumes, the finding that the company did not act upon or accept this alleged con-

sent. This evidence consists of an affidavit used upon an application by. the railroad company to the Board of Commissioners for leave to construct the road, and which affidavit was made by one Taylor who had been engaged in procuring consents of property owners, and wherein were classified the responses of the property owners to the requests for consents. In this classification it is claimed that Shaw was included as having declined to consent. It is argued that the affidavit does not sufficiently authorize the inferences claimed for it by the respondents, and that even if it does the conclusions and classification of a mere canvasser or clerk should not be accepted as controlling upon the corporation. The first point does not seem to be well made and the answer to the last proposition is that the corporation accepted and ratified the conclusions of Taylor by making the affidavit part of the papers upon which its application was based.

(3) The title which Shaw held to this parcel in 1877 passed to Mrs. Shaw, the predecessor of plaintiffs, under a deed from one Hayes which recited a valuable consideration. The construction of the road in front of the premises was not commenced until the following year, and the trial court has found that " there was no notice, so far as it appears, to plaintiffs or to their devisor (Mrs. Shaw) that Shaw had ever signed anything in the nature of a consent." No attempt was ever made to record the purported consent. Under these circumstances I think that Mrs. Shaw took her title unaffected and unimpaired by the act of her husband independent of any other consideration.

There was no such open, visible and notorious occupation by the defendants of the street under the consent, assuming it to have been one, as would operate as a notice to the plaintiffs of defendants' rights. ( *Ward* v. *Met. Elev. Ry. Co.*, 152 N. Y. 39.)

*Second.* This action was commenced and once tried before the Interborough Rapid Transit Company had become a lessee and, therefore, an appropriate party. Upon the second trial such company was by stipulation brought in as a defend-

ant and appeared by the same attorney who had already appeared in the action for the other defendants. One of plaintiffs' witnesses upon the first trial (Flock) died pending the second trial and when plaintiffs' counsel attempted to read his evidence the same was objected to by the Interborough company as inadmissible under the Code, the objection, however, being overruled.

Section 830 of the Code as amended by chapter 595 of the Laws of 1893 provided that "The testimony of any witness who has died or become insane after a former trial or hearing of * * * an action, may be read upon a subsequent trial or hearing, by any party to such action or proceeding, subject to legal objections."

There is no doubt that the term "party" in this connection included a privy such as would be a lessee in respect to his lessor. (*Jackson* v. *Crissey*, 3 Wend. 251, 252; *O'Donnell* v. *McIntyre*, 118 N. Y. 156, 162; *Bennett* v. *Couchman*, 48 Barb. 73, 81.)

By chapter 352, Laws of 1899, said section 830 was again amended so as to provide that the testimony upon a former trial of such a deceased witness might be read upon a subsequent trial of the same action "between the same parties who were parties to such former trial or hearing, or their legal representatives."

It is urged that the employment of the words "legal representatives" has modified the application of this provision as it formerly existed and that such words do not include a privy such as a lessee. It is unnecessary to spend time in considering how well founded may be appellants' contention in this regard, for a complete answer to the exception here urged is found elsewhere than in the construction of this section. Independent of statute the common law permitted the evidence of a deceased witness to be read as between the original parties or their privies. (*Jackson* v. *Bailey* 2, Johns. 17, 19; *Bradley* v. *Mirick*, 91 N. Y. 293, 295.) And there is no such conflict between the Code and this rule as works the abrogation of the latter in the absence of express repeal.

13

(Am. & Eng. Ency. of Law, vol. 26, page 662 and cases there cited.)

Therefore, the evidence was competent under the common law even if not so under the statute.

*Third.* Two of plaintiffs' witnesses (Winans and Flock) were allowed, in spite of defendants' objections, to give evidence of the value of the entire Grand Union Hotel property exclusive of the Westchester House corner, for the purpose of furnishing a basis upon which to compute damages. Such evidence included the southerly half of the block fronting upon Forty-first street. It was pressed upon the court by plaintiffs' counsel in spite of the rule accepted upon the trial that no damages could be allowed for such frontage and notwithstanding the suggestions of the court itself at the time that such evidence was probably incompetent. It was incompetent and ought not to have been offered or admitted, and if we were confined upon this appeal to the arguments addressed to us by respondents' counsel, we should be unable to find any sufficient reason for overlooking the error. An examination of the record, however, discloses that the objectionable course of plaintiffs' counsel was cured by the cross-examination of the witnesses. At various places the witnesses who had given the aggregate valuation of the property including that upon Forty-first street were, respectively, cross-examined in detail as to the separate values of the various lots which constituted the entire parcel. I think that in the case of each witness this cross-examination so disclosed the value which he put upon each portion of the property included in his objectionable aggregate valuation that the court would have no difficulty in apportioning the latter valuation properly as between the property which was and the property which was not involved. Of course, it is not held that defendants' counsel by his cross-examination in any way waived the objections made by him to the improper evidence offered by plaintiffs' counsel. The point is that by his cross-examination he supplied such details of valuation as cured the original error through making it possible for the court to apportion the evidence of aggregate

value, and apply the proper figures to the frontage upon Forty-second street.

It is also urged that similar error was committed by the court in allowing the witness Flock to give the rental value of the entire property in 1873, and as of a later date.

I do not think that the objection taken to this evidence fully and fairly raised the question now being argued, because it was not correct to urge that any evidence relating to property outside of the Westchester House raised a collateral issue. That objection ignored the balance of the property fronting upon Forty-second street, as to which evidence might be properly introduced. But here again I think that so much evidence was introduced upon the examination of the witness Ford, in the detailed statement of the rents produced from year to year, and in the schedule of rooms fronting upon 41st and 42nd streets, with respective rental values, and otherwise, that the evidence in question does not present sufficiently serious error to call for a reversal of the judgment. And still further, I think that some of the evidence drawn out by defendants' counsel in regard to rentals upon 41st street was beyond that which he was entitled to in response to what plaintiffs' counsel had previously called out; that he voluntarily opened up the subject of rental values of property other than that fronting upon 42nd street.

The evidence objected to, as to the rents of rooms fronting upon 41st street, was not very material, because the court concededly did not allow for damages upon 41st street. In addition to this, I am not prepared to say that this evidence in connection with that relating to the rents of rooms fronting upon 42nd street was not competent as indicating a lower rental value of the latter on account of the existence of defendants' railroad.

*Fourth.* Plaintiffs' expert witness Flock was interrogated and testified as follows : " Q. You have spoken of a difference between the course of values where the elevated road runs on 42nd Street and where it does not run on 42nd Street and other streets ? A. Yes, sir. Q. Supposing there had been

no elevated railroad, state whether or no there was anything in the situation to make the course of values in this part of 42nd Street run differently from the course of values on the other parts of 42nd street and the other streets you have mentioned ? Defendants' Counsel : That is objected to as incompetent, improper, inadmissible and speculative. [Objection overruled. Defendant excepts.] A. It would not be if there was no elevated railroad. Q. The percentage would have been largely the same ? Defendants' Counsel : I object to that upon all the grounds previously stated and I object upon the additional grounds that it is invading the province of the court, in other words, usurping the functions of the Court, and passing upon questions that the court should pass upon. [Objections overruled. Defendants except.] A. Yes, sir."

Previous to this the witness had testified to a certain percentage of increase in values of property in other localities where an elevated road had not been constructed, and to a smaller percentage of increase where it had been constructed. Upon this evidence the argument is based that, in effect, the witness was allowed to testify that respondents' property would have increased in value by a certain percentage if the road had not been constructed and that this evidence came within the prohibition of *Roberts* v. *N. Y. El. R. R. Co.* (128 N. Y. 455) and other similar cases where it was held that a witness would not be allowed to testify what the value of property would have been if a railroad had not been built, that being a question to be decided upon evidence of facts rather than upon speculative opinion.

I do not think that this was the fair intent or scope of the evidence offered, but that respondents' counsel was simply endeavoring to show that there had been a general appreciation in real estate valuations in other localities, and that except for the construction of the road about the same general course in valuations would have prevailed in 42nd street as elsewhere, and that such evidence was competent. (*Hunter* v. *Manhattan Ry. Co.*, 141 N. Y. 281.)

It is to be noted that the evidence of the witness specifying the percentage or proportion of increase in valuations of real estate was not directly responsive to the questions which were asked, but proceeded further than was required by such questions, they simply calling for the general course of values. T'·ə specification by the witness, however, of the precise extent to which he thought the appreciation in values had proceeded, was not regarded as material enough to prompt a motion by counsel to strike the same from the record, and when the witness stated that in his judgment " the percentage would have been largely the same " in the case of the 42nd street property as elsewhere, I think all that was meant thereby was that the same general course in values would have prevailed there as elsewhere.

In the *Hunter* case (page 287) it was held that a witness might properly answer the question, " In your judgment is there anything in the condition of Beaver and Water Streets which should induce the upward rise in values greater than would have existed in Pearl Street had there been no elevated railroad." When the witness in the case at bar testified that the same percentage would have prevailed in 42nd street as elsewhere, his evidence in effect was the same as that given in the *Hunter* case, that the upward rise in values elsewhere was not greater than would have prevailed in the locality of respondents' property if the road had not been constructed. (See, also, *Remsen* v. *Met. Elev. Ry. Co.*, 9 App. Div. 533.)

The case of *Jamieson* v. *Kings County Elevated R'way Co.* (147 N. Y. 322) does not appear to me to lay down any rule which is infringed by the admission of the evidence in question. That case held that it was improper to call owners of various parcels of land not involved for the purpose of showing the valuation of such parcels respectively before and after the construction of the railroad and thereby precipitate a number of collateral issues. It did not deny but rather recognized the propriety of showing a general course and current of values.

If the evidence here being considered is subject to the criticism that questions properly calling for a general course of values were improperly answered with a statement of objectionable details, the error should have been corrected by proper motion.

All of the other objections urged by the learned counsel for the appellants have been considered, but it is clear that none of them present such serious error as to call for a reversal of the judgment and, therefore, they are not discussed at length.

The judgment should be affirmed, with costs.

GRAY, J. (dissenting). I dissent, upon the ground that it was error for the trial court to admit the evidence of the witnesses called as experts as to the values of other property in the vicinity of the plaintiffs' property on Forty-second street. This was in violation of the rule laid down by us in the *Jamieson Case* (147 N. Y. 322); a rule which has invariably been adhered to. The error was material and the objection taken to the admission of such evidence distinctly called the attention of the court to the point. If the rule has any value in this class of cases, the error in departing from it should not be disregarded.

CULLEN, Ch. J., WERNER and CHASE, JJ., concur with HISCOCK, J.; O'BRIEN and EDWARD T. BARTLETT, JJ., concur with GRAY, J.

Judgment affirmed.