SHOOK et al. v. FOX et al.

(Supreme Court, Appellate Division, Third Department. May 22, 1908.)

1. WITNESSES—CONVERSATIONS OF DECEDENT AND THIRD PARTY.

Plaintiffs, by virtue of a will, claimed a certain double lot. Defendant claimed that the will referred only to the north half of the lot, and that she held the south half thereof by virtue of a deed left in escrow for her, and pursuant to a contract for her benefit between the testator and the mortgagor of such south half, and under which she was required to make rent payments to the testator during his life. Both the testator and the mortgagor were dead. *Held*, in an action to recover the south half of the lot, that defendant's evidence as to what transpired between testator and the mortgagor in reference to the contract made in her behalf was improperly received.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 696, 697.]

2. APPEAL AND ERROR—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE—FACTS OTHERWISE ESTABLISHED.

A judgment in an action to recover real property will not be reversed by reason of the erroneous admission of evidence as to certain facts, such facts appearing from the evidence of another witness, unimpeached and uncontradicted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4161–4170.]

3. WITNESSES—TRANSACTIONS WITH DECEDENT—PERSONS WHO MAY NOT TESTIFY.

Plaintiff, through a devise, claimed a certain double lot. Defendant claimed that the will referred only to the north half of the lot, and that she held the south half thereof by virtue of a deed from the testator, left in escrow for her pursuant to a contract for her benefit between the testator and the mortgagor of such south half, and under which she was required to make rent payments to the testator during his life. *Held*, in

an action to recover the south half of the lot, that defendant did not claim under the mortgagor, so as to make him an incompetent witness for her, under Code Civ. Proc. § 829, providing that a person under whom a party derives his interest and title shall not be examined as a witness for such party, etc.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 625–643.]

**4. EVIDENCE—ADMISSIBILITY—EVIDENCE AT FORMER TRIAL.**

Plaintiffs claimed a certain double lot under a will, by which testator devised the lot to their father for life, with remainder to them. Defendant claimed that the will ·referred only to the north half of the lot, and that she held the south half thereof by virtue of a deed from the testator, left in escrow for her and drawn pursuant to a contract for her benefit, entered into between the testator and the mortgagor of such south half, and under which she was required to make rent payments to the testator during his life. In an action of ejectment brought by the father against defendant, the mortgagor testified for defendant. Thereafter the mortgagor died. The ejectment action was never brought to trial. *Held*, in an action to recover the property, that the mortgagor's testimony· in the action of ejectment was competent, ·under Code Civ. Proc. § 830, which permits the evidence given on a former trial by a witness since deceased to be used in an action relating to the same subject-matter between the same parties or their legal representatives; the remainderman being a privy of the life tenant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2413.]

**5. SAME—HEARSAY.**

In such action it was not error to refuse to allow in evidence the books of the testator and of the executors after his death; their entries constituting mere hearsay evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 1198.]

Kellogg and Cochrane, JJ., dissenting.

Appeal from Trial Term, Rensselaer County.

Action by John W. Shook and another against Catherine Fox and others to recover certain real property. From a judgment dismissing the complaint, plaintiffs appeal. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Shaw, Bailey & Murphy (H. D. Bailey, of counsel), for appellants.

Holmes, Bryan & Holmes (John B. Holmes, of counsel), for respondents.

SMITH, P. J. In 1901 John Striker died with the record title to a lot 50 feet front upon Fourth avenue, in the village of Lansingburgh. The lot was a double lot, with a double house thereupon. The north half Striker obtained by purchase in 1897. The south half thereof, which is the property in litigation here, Striker obtained from Anna M. Hall in 1894. These plaintiffs claim under the will of Striker. The material part of that will reads as follows:

"First: I give at the decease of my wife the lot owned by me on Fourth avenue in Lansingburgh, N. Y., between Seventeenth street and Eighteenth street, to John W. Shook, for and during his natural life; and at his decease I devise the same in fee to John Shook and Frederick Shook, sons of said John W. Shook, equally share and share alike."

These plaintiffs as remaindermen claim the title to the land in controversy.

The defendant, on the other hand, claims that she is the lawful owner of said premises, and that the lot referred to in the will of Striker was the north lot purchased in 1897, and did not include the south part of this double lot which she owns.  Her evidence in part is that this property was once owned by Charles Kirkpatrick, subject to a mortgage of $1,000, held by this Anna M. Hall; that, after the foreclosure of this mortgage had been commenced, Striker proposed to Kirkpatrick that, if he would deed his equity in the premises to defendant, he (Striker) would purchase this mortgage and give it to defendant, so that defendant might have a home; that Charles Kirkpatrick and his wife, pursuant to this agreement, did deed the said premises to defendant, but that Striker did not purchase the mortgage, but allowed the foreclosure to proceed and the property to be bought in by the said mortgagee, under an agreement by which he was to obtain the same from her upon payment of the amount due upon the mortgage; that thereafter he did purchase the property of said mortgagee; that, when he had acquired title, he and defendant and Charles Kirkpatrick went to the office of a lawyer by the name of Ransom.  At that time and place there was drawn and executed a paper or deed, which gave the title to defendant, upon her payment of rent in sufficient amount to pay the amount paid by said Striker upon the mortgage; or, if the said amount should not be paid in full at the death of said Striker, then the title was to go to the defendant without further payment on her part.  This paper or deed was left with the said Ransom in escrow for her, and the defendant continued to make payments of rent, and paid a substantial sum thereupon prior to the death of said Striker.  The said Ransom, the lawyer who held the deed in escrow, is dead, and the paper or deed cannot be found.  These are substantially the facts found by the learned trial judge, and upon which he based his judgment dismissing the plaintiff's complaint.

We are of the opinion that the evidence of the defendant as to what transpired between John Striker and Charles Kirkpatrick in reference to a contract made in her behalf was improperly received.  We think such evidence comes clearly within the condemnation of the prevailing opinion in Hutton v. Smith, 175 N. Y. 375, 67 N. E. 633.  The same facts, however, were sworn to more in detail by Charles Kirkpatrick and were not contradicted, as in truth there was no opportunity to contradict, because of the death of John Striker.  Because the facts appear by evidence of another witness unimpeached and uncontradicted, we are of the opinion that this judgment should not be reversed by reason of the erroneous admission of this evidence.  If the title of the defendant must stand upon a contract between Striker and Charles Kirkpatrick, then the defense must fail, because that contract has been sworn to by Charles Kirkpatrick, who would be a party under whom the defendant would then claim, and such evidence would be incompetent to prove such fact.  This defense, however, must stand upon the papers or deed delivered in escrow to Ransom for the defendant.  While the evidence is not as clear and distinct as we might well wish as to the exact nature of the paper, and as to whether it was left with Ransom or kept by Striker, nevertheless it is clear that the parties went to Ransom's office for the purpose of drawing a paper which would give this

property to the defendant at Striker's death; and some force must be given to the presumption that the paper was of a nature that would accomplish the result desired, and that it was left with Ransom for delivery to the defendant at the death of Striker. That presumption is reinforced by the fact that this paper apparently was not found among Striker's papers at his death, and we cannot say that the finding of the trial court of the execution of the deed and its delivery to Ransom in escrow was against the weight of evidence. The evidence of Charles Kirkpatrick was given practically upon his deathbed. It is not likely at that time that he was telling an untruth, and the trial court was undoubtedly impressed, as we have been impressed, with the evident intent of these parties to provide a home for the defendant at the death of John Striker. Such too is the purport of the declarations of Striker in his lifetime.

The evidence of Charles Kirkpatrick is not incompetent under section 829. Defendant does not claim under him. But this evidence was given in an action of ejectment brought by the life tenant of the estate of which these plaintiffs are remaindermen against this same defendant. That action was never brought to trial, and the evidence was taken before a referee de bene esse. This evidence would seem to be competent under section 830 of the Code, as also under the common law. Shaw v. N. Y. El. R. R. Co., 187 N. Y. 186, 79 N. E. 984. That the remainderman is a privy of the life tenant is held in Jackson v. Lawson, 15 Johns 539, 543.

Complaint is further made that the trial court refused to allow in evidence the books of Mr. Striker and of the executors after his death. We are unable to see how that these books could in any way be competent. Their entries constituted mere hearsay evidence, and we are referred to no rule of law which makes them an exception to the general rule requiring the exclusion of such evidence. We have examined the other objections to this judgment urged by the appellant, and find no reason for reversing the same. Judgment should be affirmed with costs.

Judgment affirmed, with costs. All concur, except KELLOGG, J., dissenting in opinion in which COCHRANE, J., concurs.

JOHN M. KELLOGG, J. (dissenting). The judgment appealed from rests substantially upon the evidence of Kirkpatrick, a witness now deceased, whose testimony was taken on behalf of the defendant Fox, under section 871 of the Code of Civil Procedure, in an action of ejectment brought by the father of the plaintiffs against her. The defendant Fox was in possession under one Striker, the former owner, and she claimed to own the property by virtue of a conveyance or agreement from him. The plaintiffs claimed that Striker owned the property at the time of his death, and that, by his will, their father was given a life estate in it, with remainder to them. The father brought an action of ejectment against the defendant Fox, which she defended, in which the question litigated was whether Striker or the defendant Fox owned the property at the time of his death. The witness Kirkpatrick was in extremis at the time of his examination, and died the next day. Thereafter the plaintiff in that action died before its deter-

mination, and the plaintiffs bring this action to recover the same property.

Perhaps a life tenant may do certain acts while in possession which may prejudice the title of the remainderman; but in the case we are now considering neither the alleged life tenant nor the alleged remainderman were ever in possession, and the defendant asserts that neither had any interest as life tenant, remainderman, or otherwise in this property. Section 830 of the Code of Civil Procedure permits the evidence given upon a former trial by a witness since deceased to be used in an action relating to the same subject-matter, between the same parties or "their legal representatives." It is evident that the plaintiffs are not the legal representatives of the plaintiff in the former action. If they have any interest in this property, they acquired it by the Striker will. It is true the alleged interest of the father, and their alleged interest, is acquired under that will, which will is not in dispute; but whatever interest they had in the property they received from the testator, and not from their father. They have not succeeded to any right or interest which their father had in this property. He claimed a different interest and a different estate in the same property traced from the same title; but that does not make them his legal representatives. The testimony was not admissible within the provisions of that section. This provision of the Code, in its present form, is substantially a declaration of the common-law rule, which is said to be an exception to the general practice that hearsay evidence is not admissible. It is sometimes incorrectly said that this evidence is received because the declarant was sworn at sometime and examined by somebody, and therefore the statement had more force than the ordinary hearsay declaration. But the rule rests upon broader and more reasonable grounds. The evidence is admissible because the party himself was present at the former trial, and had the opportunity and was charged with the duty of making a full cross-examination of the witness with reference to the subject-matter, and therefore it is proper that such evidence be considered when the same subject-matter again comes in controversy between them.

1 Greenleaf's Ev. § 163, states the rule:

"But where the testimony was given under oath, in a judicial proceeding, in which the adverse litigant was a party, and where he had the power to cross-examine, and was legally called upon so to do, the great and ordinary test of truth being no longer wanting, the testimony so given is admitted, after the decease of the witness, in any subsequent suit between the same parties."

In Young v. Valentine, 177 N. Y. 347, 357, 69 N. E. 643, the court says:

"The fundamental ground upon which evidence given by a witness who afterwards dies may be read in evidence on a subsequent trial is that it was taken in an action or proceeding where the parties against whom it is offered or their privies have had both the right and the opportunity to cross-examine the witness as to the statement offered. The principle on which chiefly this evidence is admitted, namely, the right of cross-examination, requires that its admission be carefully restricted to the extent of that right, and that where the witness incidentally stated matter, as to which the party

was not permitted by the law of trials to cross-examine him, his statement as to that matter ought not afterwards to be received in evidence against such party."

In Deering v. Schreyer, 88 App. Div. 457, 85 N. Y. Supp. 875, a witness was sworn and cross-examined at length and the case decided, but the judgment was reversed upon the ground that the court had no jurisdiction, and it was held that the testimony given on such a trial could not be received in another action, for the reason that as the court had no jurisdiction the party was not legally called upon to cross-examine the witness. In Burnham v. Burnham, 46 App. Div. 513, 62 N. Y. Supp. 120, affirmed 165 N. Y. 659, 59 N. E. 1119, on opinion, where the witness was fully cross-examined upon a former trial, the evidence was excluded upon the ground that the heir was not in privity with the administrator, and therefore not within the rule. We therefore see that the fact that the party had the right and was charged with the duty of cross-examining the witness upon the former trial is the real foundation for the rule. The question in this case, therefore, is whether the plaintiffs, in fact or in law, examined or was charged with the duty of examining this witness, and whether they have succeeded to any interest which upon the former trial was clothed with such right and charged with such duty. In other words, whether with reference to such testimony the plaintiffs have had their day in court. Jackson v. Lawson, 15 Johns. 539, announces a rule which seems to justify the court in receiving Kirkpatrick's testimony. It was there held that the remainderman in possession was in privity with the life tenant, and was in possession under him to such an extent that such testimony was admissible. When offered, the trial judge excluded the testimony. Upon a motion for a new trial, the Court set aside the verdict, saying:

"On this ground the defendant is entitled to a new trial, though, independently of this, I think a new trial ought to be granted on the other grounds taken in the argument, that the verdict is against the weight of evidence."

Jackson v. Crissey, 3 Wend. 251, cites the above case as authority for the proposition that evidence given upon a trial if admissible against a party is admissible against his privy, but held that, where the party to the former suit and the party to the present suit acquired parts of the same farm from the same source, the former suit relating to one parcel of land did not affect the owner of the other parcel of land, although both rested upon the same disputed title, and therefore such evidence was not admissible. I do not find that the Lawson Case has been otherwise questioned as authority by our courts. Within the ordinary definition of the word "privy" as applied to estoppels by judgment, to the admissions of a party, and to the admission of this class of evidence, I am satisfied that that case goes too far.

In Burnham v. Burnham, supra, it was held that devisees are not in privity with the executor, and that a judgment against the latter is not evidence against them, and that the evidence of a witness (since deceased) in his action is not admissible in their action. "It seems that the same rule would apply where the parties to the first trial were represented on the second occasion by persons who have succeeded to them by privity of law, of blood, or of estate, and that the rule

upon ·the subject is in this respect analogous to that which prevails as to estoppels by judgment, the admissibility of verdicts, and the effect of admissions." 1 Phillips' Evidence, 402. Stephens' Dig. on Ev. art 32, states the proviso "that the proceeding, if civil, was between the same parties or their representatives in interest." 23 Amer. & Eng. Cyc. of Law (2d Ed.) p. 102, states the rule:

"But within the rule that judgments are binding upon privies, as well as upon the parties, only those are privies who acquire their interest in the subject-matter of the suit subsequent to the suit."

In Campbell v. Hall, 16 N. Y. 575, it was held that a mortgagee was not estopped by a judgment rendered after his mortgage, in an action between a mortgagor and a prior mortgagee; the court saying at page 581:

"An estoppel to bind the grantee or mortgagee must exist at the time of the execution of a deed or mortgage."

In Masten v. Olcott, 101 N. Y. 152, 4 N. E. 274, it was held that a judgment in ejectment against a tenant does not bind the landlord unless he is brought in and made a party in fact or in substance to the litigation; the court saying at page 161:

"The rule that estoppels bind parties and privies is no exception. This applies only to a privity arising after the event out of which the estoppel arises, and the person in privity is bound by or entitled to the benefit of the estoppel because he comes in after the fact creating the estoppel by succession or representation to the original title or interest. Campbell v. Hall, 16 N. Y. 575."

"Privity implies a relationship by succession or representation between the party of the second action and the party to the prior action in respect to the right adjudicated in the first action. When this exists, the party in the second action is barred by an adjudication upon the right made in the first action. * * * In its general legal signification stranger is opposed to the word 'privity.' By privity is meant the mutual or successive relationship to the same rights of property, and privies are classified according to the manner of relationships." O'Donnell v. McIntyre, 118 N. Y. 156, 162, 23 N. E. 455.

In that case it was held that the purchaser of a tax title was not in privity with the former owner.

A judgment in ejectment against a life tenant is not evidence against a remainderman. Sand v. Church, 152 N. Y. 174, 46 N. E. 609. Section 1524 of the Code of Civil Procedure provides that in an action to recover real property the judgment is binding upon the party and upon every person claiming from, through, or under him by title accruing either after the judgment roll is filed or after the notice of lis pendens. And the following sections (1525 and 1526), with reference to new trials in such actions, indicate that the judgment is not binding on others. The Code provision last cited clearly shows that the plaintiffs in this action could not be prejudiced by a judgment against their father in the former action, and clearly indicates that they are not privies to the father with reference to this property or bound by the evidence which was offered against him in that action.

In Shaw v. New York El. R. R. Co., 187 N. Y. 186, 79 N. E. 984, the question was considered whether the evidence of a witness in an

action against the lessor was admissible in another action against the subsequent lessee, the witness being dead; and at page 193 the court say it is unnecessary to spend time in considering whether the lessee as a privy came within the definition of section 830 of the Code as a "legal representative," as it would clearly be covered by the common law. The court did not define the words "legal representatives" nor "privy," nor did it determine whether section 830 embraced all the ground covered by the common-law rule. 25 Cyc. 175, defines a legal representative as follows:

"In the broadest sense one who lawfully represents another in any matter whatever; one who legally and lawfully represents another in any manner or thing of whatsoever nature or character it may be; any person, natural or artificial, who by operation of law stands in the place of and represents the interests of another; any person or corporation taking the beneficial interest in property, real or personal. In the common use of the words and in its ordinary signification, a term equivalent to 'executor' or 'administrator.' However, the meaning to be attached to these words in any particular case is often controlled by the context and the intent with which they are used, as well as by the existing state of things and the relative situation of the parties to be affected."

In Griswold v. Sawyer, 125 N. Y. 411, 26 N. E. 464, the expression was construed to mean "the widow and children of the deceased." In Leonard v. Harney, 63 App. Div. 294, 71 N. Y. Supp. 546, when used in a policy of insurance, the expression was held to mean the legatee of the insured. See, also, Matthews v. American Central Ins. Co., 154 N. Y. 449, 48 N. E. 751, 39 L. R. A. 433, 61 Am. St. Rep. 627. It does not appear in this case that the plaintiffs at the time knew that any action was pending. Nevertheless, if they acquired their interest from a party to that action, they take title with the burden of that action upon it, and their predecessor in title, having had ample opportunity, and being charged with the duty to cross-examine the witness, is presumed to have received the benefit therefrom and fully protected the interest the party now represents. The evidence in such cases is offered as affecting the subject-matter of the action, and not the parties. It does not attach to the persons, and cannot be received against them except in a suit relating to the same subject-matter. If the party has transferred his interest, his estate needs no protection, but there is every reason why the party succeeding to such interest should be protected. Such testimony is evidence for or against the subject-matter of the action in the hands of the original parties or of those who succeed them. I think, therefore, the words "or their legal representatives" should be given a broad meaning and construed as meaning "or their successors"; that is, the heirs, devisees, legatees, grantees, or personal representatives.

I therefore think that the evidence was inadmissible against the plaintiffs. But, if technically admissible, it was not of the strongest nature, because the plaintiffs never in fact had an opportunity to cross-examine the witness, who at the time of the examination was in a weak, feeble condition, dying the next day; and it cannot be said that such evidence is so strong in itself that the court would have decided the case in the same way if the incompetent evidence of the

defendant had not also been received to bolster it up. The evidence of the defendant was incompetent, and we cannot say that it did not prejudice the result. I therefore favor a reversal of the judgment.

COCHRANE, J., concurs.