## BOSCHEN v. STOCKWELL.

(Supreme Court, Appellate Division, Third Department. January 5, 1916.)

1. INSANE PERSONS ⊜2—ACTIONS—EVIDENCE—SUFFICIENCY.

In a proceeding to set aside a contract entered into by an alleged incompetent, evidence *held* to warrant a finding that at the time of the contract she was incompetent.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 4–10; Dec. Dig. ⊜2.]

2. INSANE PERSONS ⊜36—APPOINTMENT OF GUARDIAN—COLLATERAL ATTACK —PERSONS ENTITLED TO MAKE.

Defendant, with whom an incompetent entered into a contract, cannot, in a proceeding by her committee to set aside the contract, attack the proceedings by which the woman was declared an incompetent on the ground that the precept issued by the commissioners to the sheriff commanding him to impanel a jury was signed before the commissioners took their oath of office.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 54, 55; Dec. Dig. ⊜36.]

Kellogg, P. J., and Lyon, J., dissenting.

Appeal from Trial Term, Albany County.

Action by William C. Boschen, as committee of the person and property of Julia B. Bryant, an incompetent, against Ulysses G. Stockwell. From a judgment for plaintiff and an order denying defendant's motion to set aside the verdict and for a new trial, defendant appeals. Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Charles Irving Oliver, of Albany, for appellant.

Neile F. Towner, of Albany, for respondent.

HOWARD, J. The pleadings herein present a square issue of fact in an action at law. This issue of fact has been submitted to a jury, and the jury has found against the defendant. Neither litigant invokes the equity side of the court, and therefore we must consider the matter as it comes to us and pass upon the question presented by the appeal.

Julia B. Bryant, on August 6, 1908, entered into a written contract with the defendant, whereby he agreed to sell to Mrs. Bryant a certain building lot in the city of Albany and erect thereon a house. By the terms of the contract, Mrs. Bryant agreed to pay $4,500 for this property; $1,500 in cash, $500 by her note, and $2,500 by assuming the payment of a mortgage for that amount which was to be placed on the property. The house was afterwards built by the defendant, and Mrs. Bryant paid the $1,500 in cash and paid $400 on the note, making a total of $1,900 had and received by the defendant from Mrs. Bryant. It is to recover this $1,900 that the action is brought. No deed of the property has ever been delivered by the defendant to Mrs. Bryant. This action is instituted by William C. Boschen, a son of Mrs. Bryant, he having been appointed a committee of her person

and estate. The allegations of the complaint are to the effect that Mrs. Bryant was of unsound mind and incompetent to manage her affairs at the time of the transactions with the defendant. The answer denies this, sets up the written contract, and alleges that the defendant has been willing at all times to perform the conditions of the contract on his part. The defendant in the answer asks for no equitable relief. And by way of corroborating our view that the defendant had no purpose to ask for equitable relief in his answer, it should be noted that the defendant's counsel interrupted the trial court during the charge, for the purpose of concurring in the court's declaration that no equitable relief was sought.

[1] So that the question before the jury was as to the competency of Mrs. Bryant at the time of her transactions with the defendant. Mrs. Bryant was at one time a woman of great strength of character and possessed of considerable business ability. Was her reason dethroned and her capacity spent when she dealt with the defendant? We do not propose to review the evidence offered on that issue. The usual array of doctors, neighbors, nurses, experts, and alienists, was produced before the jury and sworn. The acts, manners, habits, language, letters, and looks of the unfortunate woman were detailed to the jury to prove, as well as to disprove, her incompetency. The opinions of the alienists, the diagnoses of the doctors, the observations of the nurses, the admissions of the litigants, were all presented to the jury. After due deliberation, being correctly instructed by the court, they rendered a verdict for the plaintiff; thus, in effect, finding that the woman was incompetent to transact business on the dates in question and that the apparent contract was in fact no contract at all. Swiftly after Mrs. Bryant's transactions with the defendant her mental malady progressed until her derangement became so obvious that she was committed, first to a public, and then to a private, insane asylum where she still remains, hopelessly demented. Thus events subsequent to the contract in question lend verification to the correctness of the verdict and vindication to the judgment of the jurors. Two juries have pronounced this woman incompetent, and, although the verdict of the jury in the proceedings for the appointment of a committee could properly relate only to her condition at the time of the inquiry, yet that verdict adds to the conviction that this woman did not comprehend her acts when she paid the $1,900 over to the defendant. We see no reason to disturb the verdict of the jury in this case. Indeed, our examination of the record leads us to the same conclusion as that reached by the 12 men who saw the witnesses and heard the testimony.

[2] We have examined with great care and considerable interest the contention of the defendant that the proceedings by which Mrs. Bryant was declared incompetent were void. But we have arrived at the conclusion that the objections thus made are not available to the defendant and can only be taken by the incompetent person in an effort to release herself and her property from the custody of the committee. The principal irregularity complained of is that the precept issued by the commissioners to the sheriff commanding him to

impanel a jury was signed by the commissioners before they took their oath of office. Had this defect in the proceedings come to us on an appeal by the alleged incompetent from the order confirming the return of the commission, as was the case in Matter of Bischoff, 80 App. Div. 326, 80 N. Y. Supp. 917, we might have considered this deviation from the strict letter of the Code sufficient to warrant us in setting aside the proceedings. But the complaint against the defect here comes to us in a collateral way; comes to us from one who is not aggrieved and cannot be aggrieved by this mere fault in procedure. Seldom is there an action or proceeding carried through the courts in which there are not missteps in the procedure. Unless these faults are substantial and do harm to somebody, they must be ignored. Owing to the multiplicity of statutes and sections and subdivisions and decisions, the wonder is that a single proceeding ever runs the gauntlet of these complexities alive. More and more the Legislature is untying the hands of the courts and, not only permitting, but commanding, them to ignore technicalities and do right. Therefore, in view of the manifestly unsubstantial and highly technical character of the defect which is complained of, we must hold it to be, so far as this appellant is concerned, a mere harmless irregularity.

This is not a hard judgment. The defendant must pay back the $1,900, with interest; but he yet has his property. He has met with some loss in the transaction by way of the idleness of his house, payment of interest on the mortgage, and taxes; but, even if he acted, as he says he did, in good faith, he was transacting business with a woman whose talk and appearance should, at least, have excited his suspicion. He took his chances, and the small losses with which he has met are only such as are incident to business ventures of this character.

The judgment and order appealed from should be affirmed, with costs.

WOODWARD and COCHRANE, JJ., concur.

JOHN M. KELLOGG, P. J. (dissenting). The principal question litigated was whether or not Mrs. Bryant was incompetent August 6, 1908, when she signed the contract in question.

On or about November 30, 1909, an inquisition was duly found adjudging that she was a lunatic with lucid intervals, and was an habitual drunkard, and, by reason of such lunacy and habitual drunkenness, incompetent to manage herself, her property, or her affairs, and that said infirmity dates from about 1908.

At the request of the plaintiff, the court charged that the decree upon the inquisition "is presumptive evidence of insanity during all of the previous times referred to in the findings," to which the defendant excepted. Section 2335 of the Code of Civil Procedure provides that such an inquiry "must be confined to the question whether he is so incompetent at the time of the inquiry." The charge therefore was erroneous, and requires a reversal of the judgment. Preston's Will, 113 App. Div. 732, 99 N. Y. Supp. 312. Before this provision was inserted in the Code, by section 2, tit. 2, of chapter 446 of the Laws

of 1874, the inquisition was presumptive evidence of incompetency during the overreached time. Van Deusen v. Sweet, 51 N. Y. 378. The Code provision clearly changed the law upon that subject. The cases relied upon by the respondent are not authorities to the contrary.

In Hughes v. Jones, 116 N. Y. 67, 22 N. E. 446, 5 L. R. A. 637, 15 Am. St. Rep. 386, the plaintiff as an heir brought an action to set aside a deed made March 18, 1870, by his father. November 13, 1871, an inquisition was found declaring the grantor's lunacy, and that he had been in that same condition for five or six years. Upon the trial the defendant offered evidence that the grantor was of sound mind at the time the deed was executed. The plaintiff, the appellant, objected, claiming that the inquisition was conclusive evidence as to insanity for that overreached time. The plaintiff's objection was overruled, and in considering the exception thereto the court cited Van Deusen v. Sweet, supra, and stated that the inquisition was presumptive evidence only as to the time overreached. The court only decided that it was competent to prove that the grantor was sane at the time the deed was made, and affirmed the judgment in favor of the defendant. It did not attempt to repeal and did not construe this Code provision; it entirely overlooked it.

In none of the other cases relied upon by the respondent was this Code provision considered or construed. The court in each case merely refers to the presumption, relying upon the Van Deusen Case and like cases. Each case was properly decided on the question actually before the court, and, if it had been held that no presumption existed, the result would have been the same. The Preston Case is the only case which construed this statute, and it shows that there is now no such presumption.

Upon the merits the judgment cannot be sustained. The complaint alleges that while Mrs. Bryant was of unsound mind and unable to take care of herself, or manage her business affairs or property, the defendant, knowing her condition, procured and induced her to advance and deliver to him, August 6, 1908, $1,500, and in February, 1909, $500; that plaintiff was appointed her committee December 11, 1909, and before the commencement of the action had demanded the return of the moneys with interest, and asked judgment therefor. It proceeds upon the theory that she had and could exercise no volition in turning over the moneys; in other words, that merely her hands and not her mind acted. It foreshadowed a cause of action for fraudulently taking money from a known incompetent person.

The answer is a denial and that on the 6th day of August, 1908, the plaintiff sold to her a lot, No. 318 Manning Boulevard, Albany, N. Y., and agreed to erect a house thereon as mentioned in the contract, for which she gave him $1,500 in cash and her note for $500 upon which $400 had been paid, and was to assume a mortgage to be placed thereon of $2,500, and that she entered into possession of said house and lot and remained in possession until December 11, 1909, since which time she or the plaintiff or both have been in possession; that at her request he made certain changes in the house, for which she was to pay him $175, and had paid taxes and water rates for her amounting

to $150; and that pursuant to said contract a mortgage had been placed on said property for $2,500, the balance of said purchase price after deducting the $1,500 cash and the $500 note; and that he is ready and willing to perform said contract.

The defendant was building many houses on Manning Boulevard and had never seen the plaintiff until she came to the houses with her niece, Mrs. Schuster, a woman of mature age, who introduced her to the defendant and asked permission to look at the houses. He showed them over the houses, and they were pleased with one of them. The next day Mrs. Bryant and her sister-in-law, Mrs. Millard, the mother of Mrs. Schuster, called at the houses and looked them over with defendant. Mrs. Millard was a woman of mature age and of good business ability. We may judge of her ability from the fact that the plaintiff afterwards deeded to her Mrs. Bryant's interest in the Buel farm of which she and Mrs. Bryant were the owners, and that she caused the same to be plotted and sold in lots for $38,000, one-half of which belonged to Mrs. Bryant. She succeeded in getting a remarkably favorable result from the property. They liked one of the houses and desired to have one built just like it on a nearby lot with certain alterations stated. Mrs. Bryant stated that she would have to go to Moline, Ill., where she lived, to get the money for the first payment, and would not be able to get it for some time. He replied that he would take her note for the first payment, and it was arranged that they would meet at the residence of Mrs. Millard to close the contract. At the time fixed, the defendant, with a notary, went to Mrs. Millard's house, and, in the presence of Mr. and Mrs. Millard and Mrs. Schuster, the contract was agreed upon and signed and the notes delivered. When the contract was read over to her, she asked to have read the part which stated when she was to go in possession. Such clause was read to her. She then asked to have the clause about the notes read, which was done. She then said that she might not have the money at the date the $500 note became due, but would have it soon after, and that was satisfactory. Evidently she and her relatives understood fully the contract and approved of it.

The plaintiff has not given us the benefit of the evidence of Mrs. Schuster and Mrs. Millard as to their views of this transaction. Mrs. Millard attempts feebly to suppress her connection with the matter, but it is evident that she and Mrs. Schuster were desirous that the house should be purchased, and advised and encouraged Mrs. Bryant to purchase it. Mrs. Bryant was about 64 years of age, and a native of Albany, and had been living alone at Moline, Ill. She came alone to Albany a few days before the contract was made, and was met at the station by Mrs. Millard, and was visiting her. She desired to return to Albany and live where her relatives were, and they evidently desired that she should do so. Her change of residence from Moline to Albany, and her purchasing this house at Albany at the price stated, were rational acts, and apparently were the proper things for her to do, encouraged and advised by the only relatives she had who appeared at the time to have any interest in her. The lot and house cost the defendant the entire purchase price, less a small build-

er's commission. The value of the property is not questioned; the purchase price was well within Mrs. Bryant's means. If at times she was intemperate, she clearly was sober when she made these important determinations, and acted with wisdom with reference to them. Immediately after the contract she returned alone to Moline, collected the money, paid it upon the notes, and returned to Albany about October, 1908. She ordered some changes in the house which apparently were very desirable. The house was then promised to be ready for her occupancy in about two weeks. She and Mrs. Millard and Mrs. Schuster were frequently at the house thereafter until she moved into it, about October, 1908.

During that month the plaintiff came to Albany, knew the terms of the contract, and thereafter asked the defendant to make certain changes in the house, which were accordingly made. Learning in February, 1909, that his mother had not received a deed, he called up the plaintiff's office and expressed anxiety that the deed should be made out, and was informed that it would be made out and delivered when the balance of the price was paid. A few days later he wrote the defendant that he had called at the office and inquired for the deed and was informed that he was ready to deliver it subject to the payment of the remaining $100, the balance of the purchase price. About March 11, 1909, he was at Albany and procured from his mother a general power of attorney and a deed of all of her property, including this house and lot which was described. He says she seemed suspicious about the deed, and it is not strange when he caused her to deed property to him, worth from $30,000 to $35,000, and was willing to pay her therefor only $100 a month. He calls it a trust deed, but does not produce it. He left the papers at the county clerk's office for record. The power of attorney was recorded; the deed was not recorded on account of nonpayment of the recording tax. She did not agree to accept the $100 per month, and shortly after wrote him a letter dated March 19, 1909, saying that she had a notice from a bank at Moline of a draft of $11.81 and had phoned the bank to pay it and they said she could not overdraw her account. She had promised to fix it up Friday, thinking she could get the amount from some money coming in and said she could pay him back in a few days. She continues:

"Things are terribly mixed up here, and I wish I had not come to Albany more every day. Do not fail to send me my letter you promised me, as I want Alfred to have part of what I am worth. I always intended giving him all I had, for he will need it and you do not."

About the same time she consulted a firm of reputable attorneys in Albany, revoked the power of attorney to plaintiff, and gave to one of them a deed of all of her property, including this house and lot, which she caused to be recorded at once. In his petition in the lunacy proceedings plaintiff states that she owns an equity and is entitled to a deed of these premises. His evidence that after he was appointed committee he caused the key to be delivered to the plaintiff is not convincing, as it appears from his cross-examination that all he knows about it is that he told Mrs. Millard to tell his attorney to deliver it.

Apparently the defendant has not yet acquired the possession of the property.

Many witnesses were called by the plaintiff who swear to acts upon her part which seemed to be the acts of a drunken woman, and most of them apparently can be accounted for in that way. We find no evidence, aside from her being under the influence of liquor at times, that she did anything which indicated that she was insane. Undoubtedly the drinking habit was growing upon her, and that aggravated her specific disease, and she probably failed rapidly in body and mind in the last few months before the committee was appointed. Her letters in evidence indicate that she fully understood herself. She attended to her own business, and it does not appear that she made any business mistakes.

There is no evidence that the defendant knew, or had reason to believe, that she was incompetent at the time of the transactions with her. The fact that she was brought to him by her niece, and that the niece and the sister-in-law were present when the transaction took place and at the only times at which he saw her, were positive assurances to him that she was all right and acting with their approval.

The plaintiff is the sole prospective heir, and apparently alone is interested in the outcome of this controversy. He is not in a position to claim that his mother was imposed upon, or that she was incapable of making this contract. He has gone too far in recognizing the contract and in recognizing his mother as the owner of the property. We must remember all the while that, if Mrs. Bryant was in an impaired mental condition when the contract was executed, no such allegation is made against the niece, the sister-in-law, or the plaintiff. When he took a deed of this property from his mother, he was competent to take it and understood what he was doing, and the defendant is in no way accountable for his acts.

By the judgment appealed from the defendant is required to pay back the purchase price, with interest from the day he received it. That fact, and the facts that he has built a house for Mrs. Bryant, according to her wishes, that he has been deprived of the use of the property during all the time, and that she had the use of it and has transferred the property to the plaintiff and also to her attorney (thus making a serious complication of the title which can only be straightened out by litigation), leaves the defendant in a very unfortunate condition. The judgment is absolutely unjust to him.

Undoubtedly one who obtains from an imbecile person money under an alleged contract, where the party does not comprehend the contract, and its execution is a mere physical and not a mental act, may be required in a legal action to pay the money back. But the circumstances of this case require that, before the plaintiff can recover the money, the title and rights which Mrs. Bryant acquired under the contract and which the plaintiff acquired and the attorney acquired by the deed from Mrs. Bryant must be tendered back as a condition precedent to the action, and an equity action must be brought to settle the matter according to equitable rules. Smith v. Ryan, 191 N. Y. 452, 455, 456, 84 N. E. 402, 19 L. R. A. (N. S.) 461, 123 Am. St. Rep. 609, 14 Ann. Cas. 505.

We do not approve of the manner in which this case was tried, and perhaps the rights of the defendant were not asserted in detail as they should have been. The defendant, however, moved for a nonsuit upon the ground that a cause of action had not been proved. The judge in his charge stated that the only question, as he understood it, was the competency of Mrs. Bryant and whether the contract was good when made, and stated that if he was in error he would like to be corrected. The defendant's counsel replied:

"We·stand not only upon the allegation that she was competent to execute that contract, but also upon the added consideration of the transfer."

This I think foreshadowed that the position of the defendant was that the contract was valid, but that the transfer and the circumstances connected with it were such that, even if there was a doubt about her competency, still there could be no recovery in this action. But without reference to whether every question was raised which should have been urged, the fact remains that the judgment is a gross injustice in its present form, and a court of justice should not permit it to stand. The plaintiff has been so far connected with the matters, and so far recognized the validity of the contract, that he cannot maintain an action at law to recover the moneys paid.

The inquisition states that even at the time it was found she had lucid intervals. Without regard to her technical condition at the time the contract was executed, the evidence is overwhelming that she was competent then; she clearly was enjoying a lucid interval at the time of the transactions.

We conclude therefore that the finding that Mrs. Bryant was incompetent, and that the plaintiff knew or had reason to believe she was incompetent at the time the contract was made, is against the evidence. We find that she was competent to make the contract and fully understood it, and that the contract was not to her disadvantage, but was reasonable and just, and that the defendant acquired good title to the money he received from her, and that in any view of the case an action at law cannot be maintained to recover the money. Plaintiff, if entitled to relief, can only obtain equitable relief in an action brought for that purpose based on a disaffirmance of the contract.

I therefore recommend that the judgment be reversed upon the law and the facts, with costs, and a new trial directed, with costs to the appellant to abide the event.

LYON, J., concurs.