In the Matter of the Probate of a Paper Propounded as the Last Will and Testament of JONATHAN PRESTON, Deceased, Bearing Date March 26, 1904.

J. MADISON WELLS, the Executor Named in the Last Will and Testament of JONATHAN PRESTON, Deceased, Appellant; H. STEPHEN PRESTON and Others, Respondents.

Second Department, June 8, 1906.

Will — decision in proceedings de lunatico inquirendo which finds lunacy prior to the time of inquisition — such decision incompetent evidence of prior incapacity — testimony of testator's physician incompetent — burden of proof as to lunacy.

A jury *de lunatico inquirendo* must confine itself to the mental condition of the alleged incompetent at the time of the hearing, and when without authority the inquisition finds lunacy prior to the time of hearing the same is not admissible in evidence to show that a testator whose will was made before the hearing lacked testamentary capacity,

The word "lunacy" as used in section 2335 of the Code of Civil Procedure
    includes imbecility arising from old age and loss of memory or understanding.
The personal physician of a testator is incompetent to testify to his lack of testa-
    mentary capacity against the objection of the proponents of the will.
It is error to rule that the burden of proof as to testamentary capacity is shifted
    to the proponent by the finding of incapacity by such inquisition. The bur-
    den of proving that a testator was *non compos mentis* rests on the party alleging
    it from the beginning to the end of the inquiry. .

APPEAL by J. Madison Wells, the executor named in the last
will and testament of Jonathan Preston, deceased, from a decree of
the Surrogate's Court of the county of Suffolk, entered in said Sur-
rogate's Court on the 10th day of June, 1905, refusing to admit to
probate a paper purporting to be the last will of · Jonathan Preston,
deceased. ·

On February 11, 1904, William T. Ross, a nephew of Jonathan
Preston, instituted proceedings *de lunatico inquirendo* to have his
uncle declared incompetent and for the appointment of a committee
of his person and property. .

On March second, following, the commissioner to whom the writ
issued, and a jury of twenty men, summoned and sworn as required
by law, after hearing the testimony of several witnesses, including
the alleged incompetent, united in an inquisition finding Preston a
person of sound mind and capable of governing himself and. man-
aging his affairs and property and properly caring for .the same.
On May 25, 1904, the motion of counsel for the alleged incompe-
tent to confirm the inquisition was denied at Special Term and an
order made directing the issuance of another commission to the same
commissioner to "inquire by a jury of Suffolk county, where the
alleged incompetent person resides, whether said Jonathan Preston
is a person incompetent to manage himself or his affairs in conse-
quence of imbecility arising from old age or loss of memory and
understanding, or other cause."

On March 26, 1904, Preston made and executed his last will and
testament. · On October fourteenth, following, the second commission
issued, and on December sixth, seventh and eighth the commissioner
and jury heard the evidence and united in a finding that Preston
was incompetent to manage himself or his affairs and that such
incompetency dated from before the month of November, 1903.
On December thirty-first the inquisition was confirmed and a com-

mittee of the person and estate was appointed and entered upon the discharge of his duties. On March 1, 1905, Preston died. On March third, following, a citation issued out of the Surrogate's Court of the county of Suffolk for the probate of said will. Certain of the heirs at law and next of kin of the decedent filed an answer in said proceeding alleging that the paper offered for probate was not the last will and testament of the deceased, and not his free, unrestrained or voluntary act; that at the time of its execution he was not of sound mind, memory or understanding; that by the inquisition of December 6, 7 and 8, 1904, he had been found incompetent to manage himself or his affairs from a date prior to the month of November, 1903, and asked for the dismissal of the proceeding.

The issues came on for trial before the surrogate on April 24, 1905. The petitioner swore the subscribing witnesses to the will, introduced it in evidence and rested. The contestants then offered in evidence the petition; commission of October 14, 1904; the precept issued by the commissioner; notice of hearing; inquisition of December 9, 1904; order of confirmation and bond of committee. The petitioner objected to these papers being received in evidence upon the grounds: *First*, that they were irrelevant, incompetent and immaterial and too remote, as the inquisition was made in December, some nine months after the execution of the will offered for probate; and *second*, that the clause in the inquisition that dated back and overreached the date of the will was null and void and contrary to the provisions of the Code requiring the jury to confine itself to the mental condition of the person at the time when the inquisition was taken, which objections were overruled and the evidence received. Exceptions were duly taken.

The following appears from the record immediately following this ruling: " The Court here decides that the burden is upon the proponent to show competency in the testator at the date of making the will. If the inquisition is competent evidence it overreaches the date of making the will and establishes a *prima facie* case of incompetency at that time, and, therefore, puts upon the proponent the burden of showing a sound and disposing mind and memory on that day."

During the progress of the trial the contestants called as a witness Dr. Loper, who had been Preston's family physician for many years. Basing his testimony upon knowledge acquired in attending Pres-

ton in his professional capacity, and while the relation of physician and patient existed between them, he was permitted to testify, over proponent's objection and exception, to Preston's mental and physical condition during several years, and that he was incompetent in the fall of 1903, as well as on March 26, 1904, the time when the will offered for probate was made. Probate was denied. From the decree accordingly entered this appeal is taken.

*Thomas Young* [*Nathan D. Petty, Nathan O. Petty* and *Charles R. Lyon* with him on the brief], for the appellant.

*Herbert L. Fordham,* for the respondents H. Stephen Preston and others.

*Frank C. Barker,* special guardian for Harold Fowler, respondent.

RICH, J.:

The ruling of the surrogate admitting that portion of the inquisition finding Preston incompetent for more than a year prior to the time it was taken, was erroneous.

Section 2335 of the Code of Civil Procedure expressly limited and confined the inquiry as to the competency of Preston to the time of the hearing, which was December 6, 7 and 8, 1904. It is immaterial that the petition upon which the proceeding was instituted omitted the word "lunacy," and alleged incompetency arising from old age, loss of memory and understanding as its basis, as the word "lunacy" as used in section 2335 of the Code, under the provisions of section 7 of the Statutory Construction Law (Laws of 1892, chap. 677), evidences all phases of alleged incompetency, except idiocy, including imbecility arising from old age and loss of memory or understanding. (*Matter of Schrodt,* 32 Misc. Rep. 540; *Matter of Clark,* 57 App. Div. 5.)

The evidence of Dr. Loper was also incompetent under the provisions of section 834 of the Code of Civil Procedure. Under this section it has been held that a physician cannot testify as to the previous condition of a person, whose knowledge was acquired while attending such person (*Barker* v. *Cunard Steamship Co.,* 91 Hun, 495; affd. without opinion in 157 N. Y. 693); and that information of the existence of an ailment, although not the subject

of the physician's attendance or treatment, acquired through examination of the patient in attending him in a professional capacity, is privileged (*Nelson* v. *Village of Oneida*, 156 N. Y. 219); and that upon the probate of a will the testimony of a physician who attended upon the testator in a professional capacity is not competent upon the question of mental capacity. (*Matter of Coleman*, 111 N. Y. 220.)

The objections to the evidence were sufficiently definite, and there is no suggestion of any waiver under which the evidence objected to was made competent. The ruling of the learned surrogate that the burden of proof was by the inquisition shifted to proponent, was also erroneous. At common law and under our statutes the presumption is that every man is *compos mentis* at the time of performance of the act challenged; the burden of proving that he was *non compos mentis* rests from beginning to end of the inquiry upon the party who alleges an unnatural condition of mind existing in the testator. "He who sets up the fact that the testator was *non compos mentis*, must prove it." (*Delafield* v. *Parish*, 25 N. Y. 9.)

In his opinion the learned surrogate says: "This inquisition was concurred in by the commissioner and was confirmed by an order of the Supreme Court dated December 31st, 1904, in and by which a committee of the person and estate of the deceased was duly appointed. The finding of this jury, concurred in by the commissioner in the proceedings *de lunatico inquirendo*, is not only presumptive evidence of the testamentary incapacity of the decedent, *but is conclusive* upon the subject until overcome by satisfactory evidence. (*Matter of Widmayer*, 74 App. Div. 336, citing *Matter of Coe*, 47 App. Div. 177; *Matter of Clark*, 57 App. Div. 5; Underhill on Wills, Sec. 99.) And on the authority of *Wadsworth against Sharpsteen*, 8 N. Y. 395, 'the cases do not make any distinction where the act is overreached by the inquisition, whether it was committed before or after the time that the inquisition was found. There can be no difference in principle between the two cases.' This, then, is the situation. A jury having found that the decedent was incompetent to take charge of his property and manage his affairs, and it appearing that the alleged will was made intermediate such finding and the institution of the proceedings *de lunatico inquirendo*, a legal presumption exists *which is binding upon the Surrogate*, until overcome by proof, that the decedent was incom-

petent to make a will at the time that this will purports to have been made. (*Matter of Widmayer, supra.*) * * * I think proponents have signally failed to meet the presumption against the competency of this testator following the inquisition and its confirmation."

*Wadsworth* v. *Sharpsteen* (*supra*), cited as an authority, was decided twenty-one years before the section of the Code in question was enacted, and he quotes from the dissenting opinion.

Neither in that case or in *Matter of Widmayer* or *Matter of Coe*, also cited, was the question involved in this proceeding considered or determined. The act of the incompetent challenged in each case was done *after* the inquisition, and not several months before, as in the case at bar. The cases relied on do not support the views of the learned surrogate; nor does *Hughes* v. *Jones* (116 N. Y. 67), cited by the respondents, in which the commission was issued October 18, and inquisition filed November 13, 1871, more than two years before the amendatory statute first prohibiting retrospective findings was enacted, and at a time when such findings were authorized by the existing law.

The opinion next asserts: "Nor is this all. Certain direct, positive and wholly reliable testimony has been offered in this proceeding as to the mental condition of this decedent that had no place before the jury in this inquiry. In the lunacy proceedings the lips of the one man whose opportunities to observe were the best, and whose deductions from observed facts were the most reliable and trustworthy, were fast sealed. Dr. Arthur C. Loper then testified upon a hypothetical state of facts only, just as some other physician did. But *now the seal of professional privilege is broken and he testifies from knowledge gained in his capacity as a physician in constant attendance upon the decedent up to the fall of 1903* that the decedent was then incompetent, and was so on March 26th, 1904."

It is obvious from his opinion that the learned surrogate regarded himself concluded by the findings contained in the inquisition. The only evidence outside of that afforded by the inquisition and order of confirmation, which he seems to have taken into consideration, was the incompetent evidence of Dr. Loper, which he holds fortifies and strengthens the presumption he concluded he was bound by.

Eliminating the incompetent evidence and giving careful consid-

eration to that remaining, I am not clear but that the weight of evidence was in favor of the proponent and that the will should have been admitted to probate. It follows, therefore, that the decree must be reversed, both upon questions of law and fact, costs to abide the event, payable out of the estate, and the following questions of fact sent to a jury for determination :

*First.* Was the alleged testator competent to make a last will and testament at the time the will proposed for probate is alleged to have been executed ?

*Second.* Was such will, if executed, the free and voluntary act of the decedent ?

*Third.* Was the will offered for probate signed and duly executed by decedent ?

HIRSCHBERG, P. J., WOODWARD, JENKS and MILLER, JJ., concurred.

Decree of the Surrogate's Court of Suffolk county reversed upon questions of law and fact, and questions ordered to be submitted to a jury for determination, costs to abide the event, payable out of the estate.