---

## In re VAIL.

(Supreme Court, Appellate Division, First Department. March 11, 1910.)

1. INSANE PERSONS (§ 20*)—INQUISITION—SCOPE OF INQUIRY.

　　Under Code Civ. Proc. § 2335, providing that, where an application alleges incompetency and asks the appointment of a committee, the inquiry must be confined to the condition of the alleged incompetent at the time of the inquiry, testimony as to things said or done by the alleged incompetent is confined to two years before the hearing, unless the courts deem it necessary to extend that period, for the purpose of determining his condition at the time of hearing.

　　[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 28; Dec. Dig. § 20.*]

2. INSANE PERSONS (§ 16*)—INQUISITIONS—INJUNCTION.

　　Under Code Civ. Proc. § 2327, relating to inquisition proceedings, authorizing an injunction restraining the transfer or incumbrance of property obtained from the alleged incompetent, the restraining order is incidental to the order for the commission, and must fall with it, where such commission is improperly ordered.

　　[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 25; Dec. Dig. § 16.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. INSANE PERSONS (§ 17*)—APPOINTMENT OF COMMISSION—DISCRETION OF COURT.**

The authority to appoint a commission is not to be exercised in all cases of incompetency, but only where in the sound discretion of the court it appears that a committee is necessary.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 26; Dec. Dig. § 17.*]

**4. INSANE PERSONS (§ 17*)—INQUISITION—EVIDENCE.**

On application for issue of a commission in inquisition proceedings, evidence *held* insufficient to show that the appointment of a committee of the alleged incompetent was necessary.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 26; Dec. Dig. § 17.*]

**5. INSANE PERSONS (§ 27*)—INQUISITION—REVIEW—EXTENT OF RELIEF.**

On appeal from an order directing that a commission issue to inquire into the competency of an alleged incompetent and enjoining appellant from disposing of property acquired by her from such alleged incompetent, the entire record being before the court, and it appearing that there is no necessity for a committee, the entire order should be reversed in toto, regardless of whether or not, but for the restraining order, appellant would have had a standing to appeal.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 37; Dec. Dig. § 27.*]

Appeal from Special Term, New York County.

Proceedings by F. Gilleard Vail to have Francis Vail adjudged incompetent, and to enjoin Ophelia Vail from selling, assigning, or incumbering any property acquired by her from the alleged incompetent. From an order of the Special Term directing that a commission issue to commissioners named and enjoining said Ophelia Vail from disposing of or incumbering such property, she appeals. Reversed.

Argued before CLARKE, McLAUGHLIN, SCOTT, and LAUGHLIN, JJ.

De Witt Bailey, for appellant.
Frank E. Carstarphen, for respondent.

LAUGHLIN, J. This proceeding was instituted by F. Gilleard Vail, who is the son of the alleged incompetent. He made a prior application on a petition verified on the 16th day of September, 1909, which was denied on the 18th day of October, 1909, without prejudice to the renewal thereof. Affidavits were read both in support of and in opposition to the application.

It appears that the alleged incompetent is 65 years of age, and that he has a wife, the appellant, and four children, all of full age, the petitioner and two unmarried daughters who reside at home, and one married daughter who resides at Kingston, N. Y. It is alleged in the petition that the incompetency of Vail dates from the 7th day of June, 1906. It is shown that at that time he owned three parcels of real property in Greater New York of the value of about $200,000, from which there was an annual income of about $10,000, and personal property consisting of one gold watch, one diamond gold stud, and $1,000 on deposit in the Oriental Bank, and that he conveyed all the real estate to his wife by three separate conveyances, each dated the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4th, acknowledged the 6th, and recorded the 28th day of August, 1906; the consideration recited therein being one dollar and love and affection. It is not shown whether or not the personal property has been transferred; but it does not appear that it requires attention, or is in danger of being lost or wasted. It is further alleged in the petition that on the 7th day of June, 1906, the alleged incompetent suffered a stroke of apoplexy, and that during the month and subsequently he was afflicted with kidney trouble and chronic interstitial nephritis with hypertrophic cirrhosis of the liver; that from that date until the 10th of the month he was an inmate of the Harlem Hospital, when he was removed to the Hahnemann Hospital, where he remained until the 16th of the month, during which time he was under observation and treatment; that about the middle of the month of July thereafter he suffered a second stroke of apoplexy, which paralyzed his tongue and practically destroyed his eyesight; that by direction of the appellant he was thereafter taken to Dr. Givens' Private Sanitarium or asylum at Stamford, Conn., where he has since remained and still is; that the sum of $25 per week is being paid for his maintenance; that his condition "is such that it affords no reasonable hope of his ever becoming any better"; that the appellant is only paying the sum of $25 per week from the income of the property for the support of the alleged incompetent; and that she and her unmarried daughters are living extravagantly on the remainder of the income.

It appears that the alleged incompetent has received proper medical care and attention from the beginning of his illness, and that by direction of his family physician he was taken to Dr. Givens' Sanitarium on the 7th day of November, 1906, where physicians and trained nurses are properly administering to his health and comfort, and that his wife visits him at regular intervals as often as once a week, and that his health and comfort require that he be permitted to remain there. His wife and children, with the exception of the petitioner, who apparently have at least the ordinary affection for him, appear to be satisfied that it is best for him to be in the sanitarium. It is not seriously controverted that he is now both physically and mentally incapable of properly caring for himself or managing affairs or property. The petitioner seems to be of opinion that, if more money were expended in the care and maintenance of the alleged incompetent, he would be more comfortable or happy or healthy; but he states no fact to sustain this claim, and his theory is not corroborated even by the opinions of others. The affidavits presented in support of the petitioner do not show the state of the mind of the alleged incompetent on the day he executed the conveyances, for they were executed at Kingston, while he and his wife were on a visit to their daughter; but they tend to show that shortly before and soon after the execution of the deeds his mind apparently had been so affected by illness and disease that he was not competent to transact business. On the other hand, there is ample evidence tending to show that he was in full possession of his mental faculties at the time he executed the deeds, and that they were prepared at his request and by his direction after he had been advised by a physician called to attend him that it would be well for

him to arrange his wordly affairs. There is no evidence that there was any understanding between the mother and the children, other than the petitioner, with respect to a division of the property; nor is there any basis presented by the record for a charge or inference that the mother and daughters conspired to induce, or were guilty of duress in inducing, the alleged incompetent to execute the deeds. The affidavits, not only of the appellant, but of her three daughters and her son-in-law and others, fairly meet the charge that the incompetent was not possessed of sufficient mentality to fully understand his acts in conveying the property to his wife.

The petitioner claims that he was not informed of the execution of the deeds, and was not aware that they had been executed until shortly after his father had been taken to the sanitarium at Stamford; but, according to the affidavits of his mother and unmarried sisters, he knew of it and discussed it with them on the 29th day of the month, the conveyances were executed, and he was displeased over the fact and found fault with them, and was referred to his father who was then in the house. The petitioner had no business or source of income. He lived at home, and was, according to his own affidavit, supported by his father until the latter was taken to the sanitarium, which tends to show that his father down to that time had sufficient possession of his faculties to attend to the wants of the petitioner. After his father's illness he regularly received a weekly allowance from his mother, with the exception of a period until shortly before he instituted the first proceeding, when it was withheld, because he refused to surrender a pawn check for some jewelry which his father had given to him and which she desired to redeem.

We are convinced that the application was not made in good faith. It is apparent that the principal motive, if not the sole motive, of the petitioner is not to improve the circumstances or surroundings of his father. He evidently desires to embarrass his mother with respect to the ownership of the land and to obtain evidence upon which the conveyances to her may be attacked in his interest in an action by the committee. By virtue of the provisions of section 2335 of the Code of Civil Procedure, the inquiry, if a commission were issued, would necessarily be confined to the question whether the alleged incompetent is so incompetent at the time of the inquiry, and the testimony with respect to things said or done by him or his demeanor or state of mind would be confined to the period of two years before the hearing, unless the nature of the case be such that the court deems it necessary to extend that period, not for the purpose of determining the state of mind of the alleged incompetent at the time of the conveyance or transfer of any property by him, but for the purpose of determining the issue to be tried, namely, whether he was incompetent at the time of the hearing. In re Preston, 113 App. Div. 732, 99 N. Y. Supp. 312.

The court in this proceeding directed that the inquiries with respect to things said or done by the alleged incompetent or his demeanor or state of mind extend back to the 7th day of June, 1896, which would be a proper exercise of judicial discretion if that were necessary to determine his state of mind at the time of the hearing. The court also,

on the allegations of the petition and affidavits to the effect that the conveyances were made without adequate consideration while the grantor was incompetent, granted the restraining order with respect to the property which the appellant received from her husband. That authority is conferred by section 2327 of the Code of Civil Procedure, to be exercised in a case where it satisfactorily appears that a commission should issue, and that property was obtained from the alleged incompetent during his incompetency without adequate consideration. The purpose of the order in such case is to prevent the transfer or incumbrance of the property before the appointment of a committee who would be authorized to take such action as might be necessary to recover it or redress the wrong. The restraining order is incidental to the order for the commission and manifestly must fall with it. As this court recently decided in Matter of Burke, 125 App. Div. 889, 110 N. Y. Supp. 1004, the authority to appoint a commission is not to be exercised in all cases of incompetency, but only where in the sound discretion of the court it appears that a committee is necessary.

We are of opinion that it has not been satisfactorily shown that the appointment of a committee of the alleged incompetent is necessary. The restraining order alone gives the appellant a standing to appeal, and the record being thus properly before the court, and it appearing that there is no necessity for a committee, the entire order should be reversed in toto, regardless of whether or not but for the restraining order the appellant would have had a standing to appeal either in her own right or as the next friend to the alleged incompetent.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.