## In re MINNESOTA PHONOGRAPH CO.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

ATTORNEY AND CLIENT (§ 126*)—ENFORCEMENT OF PAYMENT BY ATTORNEY—PREREQUISITES.

> Before a court can enforce payment by an attorney in a summary proceeding, the attorney must have received the money while the relation of attorney and client existed.

> [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 264–273; Dec. Dig. § 126.*]

Appeal from Special Term, New York County.

Proceeding by the Minnesota Phonograph Company against J. C. Tomlinson and others, as attorneys, to compel payment of money. From an order appointing a referee, the attorneys appeal. Reversed, and motion denied.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

F. S. Bangs, for appellants.
Carroll Sprigg, for respondent.

McLAUGHLIN, J. This proceeding was instituted for the purpose of compelling the appellants, attorneys and counselors of this court, to pay the respondent the sum of $6,000. When the matter came before the Special Term, an order was made, from which the appeal is taken, sending the same to a referee to take proof and report with his opinion with reference thereto. A brief consideration of the facts involved in, or connected with, the claim made by the respondent, will demonstrate that the order appealed from cannot be permitted to stand.

In January, 1901, the New York Phonograph Company commenced a suit in the United States Circuit Court for the Southern District of New York against Thomas A. Edison and others, to restrain them from selling phonographs and supplies in the state of New York, in violation of certain alleged contract rights. This suit, after considerable litigation, resulted, in January, 1905, in a decree in favor of the plaintiff directing an accounting, which was affirmed on appeal. The appellants were solicitors of record for the plaintiff in that suit under a written agreement which continued until the litigation was finally terminated by a settlement. In March, 1905, there were also pending in the New York Supreme Court some 400 actions brought by the same plaintiff against dealers in phonographs and phonographic supplies. There were also eight other companies, including the petitioner, which claimed certain rights within the several states of their

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

organization, under contracts somewhat similar to that involved in the suit brought by the New York Phonograph Company. One James L. Andem, who had a large personal interest in the phonograph business involved in the various contracts of these eight companies, undertook to enforce their rights, and by an agreement with them he became entitled to 60 per cent. of any recovery that might be obtained, in consideration of which he bound himself to bear the expenses of the litigation. After a decree had been entered in favor of the New York Phonograph Company in the suit instituted by it, Andem caused suits to be brought in the United States Circuit Court for the District of New Jersey on behalf of the eight companies which he represented; one Huerstel being the solicitor of record. These suits were never prosecuted to judgment, and nothing seems to have been done with reference to them up to the time of the settlement hereinafter referred to. After the eight suits had been instituted, Andem retained the appellants "to render such assistance as counsel in such action or actions" as he "and the solicitor or attorneys of record in said action or actions may desire." Some time after the affirmance of the decree in the suit brought by the New York Phonograph Company, a settlement was made of that suit and the other actions instituted in the state of New York, and in connection therewith the question arose as to the settlement of the suits which had been instituted by Andem on behalf of the eight companies in New Jersey, which finally resulted in the payment of $50,000, in full settlement thereof. This amount was paid to Andem, and, after deducting 60 per cent.—the amount to which he was entitled under his agreement—$20,000 was left to be distributed among the respective claimants. It seems that Andem's authority to settle such suits was limited; he being authorized to do so only on the payment of $90,000, which sum was to be divided among them in certain proportions—$20,000 going to the respondent herein. Without, however, consulting with any of them at the time of the settlement, he assumed the responsibility of settling for $50,000, which he insisted should be, and which was, finally paid. After the settlement, the appellants, acting for and on behalf of Andem, wrote the respondent, informing it that the New York suit had been settled and at the time of the settlement:

"Following Mr. Andem's instructions, we insisted upon some recognition by the Edison interests of the rights of these outside local companies before consenting to a settlement of the New York cases, and, finally, after a most earnest effort, we compelled the payment of $50,000 on their behalf. After deducting Mr. Andem's percentages, there remains $20,000 for distribution among these seven companies, and Mr. Andem desires us to inform you that as soon as instructions are received as to whom this money should be paid over, this amount will be distributed in proper proportions to the several companies concerned."

Shortly thereafter, Andem also informed them of the terms of the settlement of all of the litigation, and that he had assumed the responsibility of settling the suits instituted by him in New Jersey for $50,000, which, after deducting his percentage, left $2,000, as the respondent's share, and, as soon as its assent to the settlement was obtained, he would forward draft for that amount. As directed by

the respondent, he subsequently sent them a check for $2,000, and in the letter inclosing the same he said:

"This check represents the entire sum which the company is entitled to receive as a result of the settlement of its claims against the National Phonograph Company and others, which settlement was made by me, acting for and on behalf of your company. I also inclose a general release and form of receipt which are to be signed and returned to me before the check is used."

The receipt was signed, a general release given, and both returned to Andem. Some two years afterwards the respondent instituted this proceeding, alleging that Andem had no authority to settle its claim for less than $20,000, and in the settlement made by the New York Phonograph Company it was understood that at least $20,000 additional should be paid for the settlement of the respondent's suit, which it had instituted in New Jersey; that, as soon as these facts became known to the respondent, it demanded from the appellants its share of the $20,000, that is, $8,000, and, inasmuch as it had received only $2,000, it was entitled to $6,000 more. The demand was not complied with, and thereupon it asked that the respondents, as attorneys of this court, be ordered to pay over the same.

Upon the foregoing facts I am clearly of the opinion that the court had no power to summarily direct, by order, the payment of the amount claimed, or to appoint a referee to take proof and report with his opinion with reference to such payment. Before the court can enforce payment by an attorney by an order in a summary proceeding, two things must appear: First, that the relation of attorney and client existed; and, second, that while such relation existed, the attorney received money or property belonging to the client, which he had failed to pay over or account for.

In Matter of Hillebrandt, 33 App. Div. 191, 53 N. Y. Supp. 352, the rule is tersely stated as follows:

"Summary proceedings of this character are not sustained except upon clear proof that the relation of attorney at law and client existed, and that an attorney at law had received the money or the property of a client while acting in this professional capacity and had failed to account for it to the client."

This rule is quoted with approval in Taylor v. Long Island R. R. Co., 38 App. Div. 595, 56 N. Y. Supp. 665. There are numerous authorities to the same effect (Matter of Cattus, 42 App. Div. 134, 59 N. Y. Supp. 55; Matter of Dailey v. Wellbrock, 65 App. Div. 523, 72 N. Y. Supp. 848; Matter of Hirshbach, 72 App. Div. 79, 76 N. Y. Supp. 117), and the burden of showing such facts is upon the petitioner (Matter of Knapp, 85 N. Y. 284).

Apply this rule to the facts not in dispute in the record before us, and the reason why the order should not have been made becomes clear. The relation of attorney at law and client did not exist between the respondent and the appellants at the time the settlement was made. The appellants were never retained by the respondent. It never agreed to pay them for services rendered, and were under no legal obligation to do so. They were retained by Andem upon his agreement to pay, and the only moneys received by them were paid by

Andem out of his share of the settlement. One does not forfeit any of his rights by becoming an attorney at law. He has the same rights thereafter that other persons have, which includes the right to have asserted claims against him established in the regular and ordinary way, that is, by action, except only in the case where the claim is for money received for his client while he is acting as an attorney at law for him.

The order appealed from, therefore, is reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.