In the Matter of the Application for the Appointment of a Committee of the Person and Property of EDWIN J. LONG, an Alleged Incompetent Person.

HARRY H. GOEBEL and JACOB GOEBEL, Appellants; HENRY A. CORNELL, as Committee, etc., of EDWIN J. LONG, an Alleged Incompetent Person, Respondent.

Second Department, March 10, 1941.

*Robert H. Elder* [*Otho S. Bowling* with him on the brief], for the appellants.

*Frederick Shulman,* for the respondent.

JOHNSTON, J. On January 15, 1940, on the petition of a sister-in-law, a proceeding was commenced for the appointment of a committee of the person and property of Edwin J. Long, an alleged incompetent. On January 22, 1940, the alleged incompetent retained Harry H. Goebel and Jacob Goebel to represent him in the proceeding, and they filed a notice of appearance. The retainer was in writing, signed by the alleged incompetent. It provided for the payment of a fee of $5,000, of which $1,000 had been paid on account and the balance was to be paid within a week. It also provided that this sum was not to be for services in prosecuting any appeal. It is admitted that $2,500 has been paid under the retainer. The above-named attorneys thereafter represented the alleged incompetent and filed affidavits in opposition to a motion for an order directing that there be a jury trial of the issues. The motion was granted. The order entered February 19, 1940, recites that it presumptively appeared to the satisfaction of the court that a committee, in the exercise of sound discretion, should be appointed. The attorneys served a notice of appeal from this order, claiming to be authorized so to do by one Ragno, who was Long's attorney in fact. This authorization is in writing and was signed on February 26, 1940. The attorneys admit they received $800 for the services to be rendered in prosecuting this appeal. The trial, which continued for five days, resulted in a verdict that the alleged incompetent was of unsound mind and unable to manage himself or his property. Thereafter and on April 6, 1940, an order was entered confirming the verdict and adjudging that Long was incompetent. On the same day a commission issued to Henry A. Cornell, appointing him committee of the incompetent's property. The attorneys also filed a notice of appeal from this order. While the exact dates when the payments were made to the attorneys do not appear, it is admitted they received a total of $3,300, and it is not disputed that all the payments were made prior to the adjudication of incompetency.

By order to show cause dated May 29, 1940, the committee moved in this proceeding for an order directing the attorneys to return forthwith to the committee the $3,300, claiming it had been " fraudulently taken by them from the estate of the incompetent, during the pendency of this action, without his knowledge or consent and contrary to law." The attorneys opposed the motion, asserting that the court did not have jurisdiction to make a summary order, and made a cross-motion, asking that in the event the court should determine that it has jurisdiction to grant the committee's motion, the court direct a trial so that they may show the facts and circumstances surrounding the execution of

the original retainer and show the reasonable value of the services rendered by them or, in the alternative, that the court refer the matter to an official referee to hear and determine the issues. The committee's application was granted and the attorney's cross-motion denied. The learned Special Term stated that the attorneys were not justified, while the proceeding was pending, in receiving funds of the alleged incompetent for legal services without awaiting the result of the inquisition and without application to the court for an allowance. The order was entered on June 28, 1940, and the attorneys appealed. This court granted a stay on condition that the attorneys deposit the sum of $3,300 in court. They have done so. On October 30, 1940, the order of June 28, 1940, was resettled. The attorneys appealed from both the original and resettled orders, but the appeal from the original order has been dismissed.

We are not presently concerned with the propriety of appellants' conduct. The sole question involved is the power of the court to order summarily the return of the moneys paid by Long prior to the adjudication of incompetency.

All contracts of a person of unsound mind, made after inquisition and confirmation thereof, are absolutely void, and the world is chargeable with notice that they are void (*Carter* v. *Beckwith*, 128 N. Y. 312, 316; *Hughes* v. *Jones*, 116 id. 67, 72, 73; *McCarthy* v. *Bowling Green Storage & Van Co.*, 182 App. Div. 18, 21, and cases cited); but the contracts of a person of unsound mind who has not been judicially declared incompetent or, as the ancient cases termed it, " before office found," are voidable only at his election upon recovering his reason, or at the election of his committee or personal representatives or heirs. (*Finch* v. *Goldstein*, 245 N. Y. 300; *Smith* v. *Ryan*, 191 id. 452, 455; *Blinn* v. *Schwarz*, 177 id. 252; *McCarthy* v. *Bowling Green Storage & Van Co.*, supra.)

The agreements retaining appellants and the payments made thereunder were made prior to the adjudication of Long's incompetency and the appointment of the committee. The Special Term, in directing summarily the return of the money paid under the agreements, in effect declared the agreements void. This the court was without power to do. " Until the appointment of a committee neither the State nor any one else has any power or control over his [the incompetent's] property or any authority to act in his behalf. He alone remains in possession of his property and can dispose of it." (*Finch* v. *Goldstein*, supra.) There is one exception to this rule. Section 1362 of the Civil Practice Act provides that if it satisfactorily appears from the petition and accompanying affidavits that someone has acquired from the

alleged incompetent person, during the period of the alleged incompetency, real or personal property without adequate consideration, the court may restrain him from disposing of or incumbering such property or confessing judgment, which shall become a lien on such property. (*Matter of Frank*, 283 N. Y. 106, 110.) No application for such relief was applied for in the instant proceeding.

In the petition it is alleged that Long was incompetent from January, 1937, and the supporting affidavit of a physician indicates that he was incompetent for some time prior to the commencement of this proceeding. It is clear from the learned justice's two opinions that he made the order because he was satisfied from the evidence presented at the inquisition, where he presided, that the alleged incompetent was of unsound mind at the time and long prior to the date he retained appellants. But the inquiry was confined, as it had to be under the statute (Civ. Prac. Act, § 1371), to the question whether Long was incompetent at the time of the inquisition. (*Matter of Vail*, 137 App. Div. 220, 224; *Matter of Cook*, 6 N. Y. Supp. 720, 721, not officially reported.) Therefore, there was no finding, and there could be none, that he was incompetent at the time the retainer agreements and the payments thereunder were made even though there doubtless was evidence to that effect. But that evidence, though proper under the statute (Civ. Prac. Act, § 1371), was not for the purpose of showing that Long was of unsound mind at the time he made the agreements and parted with the $3,300, but was introduced for the purpose of determining the issue, to wit, whether he was incompetent at the time of the inquiry. (*Matter of Preston*, 113 App. Div. 732.) Moreover, the appellants cannot be bound by the finding of the Special Term that the alleged incompetent was of unsound mind prior to and at the time he retained and paid appellants; nor are they bound by the verdict of the jury or by the order confirming the verdict and adjudging Long incompetent. They were not parties to the proceeding and had no connection with it, except as attorneys for the alleged incompetent. (*Matter of Hardy*, 26 App. Div. 164, 166.) In the case just cited a proceeding *de lunatico inquirendo* was instituted and the alleged incompetent applied to the court for leave, in resisting the proceeding then pending, to use so much of her property as might be necessary to employ counsel and obtain medical experts. The court did not act on the application until after the inquisition, which resulted in a finding that the respondent was incompetent to manage herself or her property, when the court entered an order directing that respondent be allowed fifty dollars, which the committee, when appointed, was directed to pay her counsel. The attorneys refused

to accept the sum allowed, and applied for an order either directing the committee to pay them a certain sum for services rendered and expenses incurred in defending the incompetency proceeding, or that they be permitted to bring an action to establish the same. The Special Term denied the application. The order was reversed and the application granted, permitting the attorneys to bring an action against the committee to enforce their claim. The court held that the statute (Code Civ. Proc. § 2336, now Civ. Prac. Act, § 1373), providing that where a committee of the property is appointed the court in its discretion may direct the committee to pay a sum not exceeding fifty dollars and disbursements to the attorney for any adverse party, " does not attempt to regulate the compensation to be paid to an attorney for services rendered, as between attorney and client " (p. 166). The court said (p. 166): " There is no reason why one against whom proceedings under the title are instituted should not have the right to the services of counsel, and why such counsel should not be paid for such services when rendered." The court also pointed out that if it be found that the alleged incompetent is in fact incompetent, the court has power to make an award, payable out of his estate, to the attorneys who rendered services in defending him. Obviously, it would have been better had appellants resorted to the same procedure as was followed by the attorneys in *Matter of Hardy* (*supra*); but their failure to do so, which ultimately may result in their obtaining no compensation, did not, in our opinion, justify the court in making the order appealed from. It has been held that where a solicitor appears in behalf of a person against whom a commission of lunacy is issued, to oppose the same, but notwithstanding such opposition the person is adjudged incompetent and a committee appointed, the solicitor has no legal claim against the estate of the incompetent for his services. (*Matter of Conklin*, 8 Paige, 450, 451.) But that case was decided when the statute permitted the court to inquire whether the person is a lunatic and if so, from what time and in what manner; and on the hearing it was found that at the time of the alleged retainer the person against whom the commission issued was a lunatic. As heretofore shown, there was no such finding in the instant proceeding and there could be none.

It is true, as stated by the learned Special Term, that the property of the incompetent necessary for his support should not be unnecessarily wasted in useless litigation. Moreover, it may be, in view of the evidence at the inquisition, that appellants have no moral or legal right to retain the $3,300, but their contracts made with their client which, so far as this record discloses, were valid when made, may not be summarily destroyed. The com-

mittee is not without a remedy. He may commence an action to cancel the contracts and recover the consideration by reason of the fraud which it is alleged was perpetrated upon an unfortunate and helpless man.

Nor may the order be sustained because of the court's inherent power of control over its attorneys and officers. In *Matter of Jeffries* (219 N. Y. 573) the petitioner applied for a summary order requiring her attorney to deliver to her certain promissory notes and the interest collected thereon. The attorney claimed the notes were indorsed to him and delivered in payment for legal services rendered. The Special Term in denying the motion stated in the order: " This is not a case in which a peremptory order may be made. The rights of the parties should be litigated in the ordinary way." The Court of Appeals affirmed.

In *Matter of Hess* (133 App. Div. 654) it was held that the court will not exercise its summary jurisdiction over attorneys to compel an attorney to return counsel fees voluntarily paid to him. (See, also, *Matter of Rosenberg*, 263 N. Y. 357, and cases cited.) This summary power of the court is exercised only when the attorney withholds money or property from his client which he is in duty bound to turn over. (*Matter of Bailey* v. *Rutherford*, 242 N. Y. 220; *Schell* v. *Mayor*, etc., 128 id. 67.) In *Matter of Minnesota Phonograph Co.* (148 App. Div. 56; affd. on opinion below, 212 N. Y. 574), McLAUGHLIN, J., said (p. 60): " One does not forfeit any of his rights by becoming an attorney at law. He has the same rights thereafter that other persons have, which includes the right to have asserted claims against him established in the regular and ordinary way, that is, by action, *except only in the case where the claim is for money received for his client while he is acting as an attorney at law for him.*"

The order should be reversed on the law, without costs, and the motion denied, without costs.

LAZANSKY, P. J., and TAYLOR, J., concur; HAGARTY, J., with whom ADEL, J., concurs, dissents and votes to affirm the order, with opinion.

HAGARTY, J. (dissenting). The order about to be reversed directs Harry H. Goebel and Jacob Goebel, attorneys, summarily to pay over to the respondent, as committee of the property of the incompetent herein, the sum of $3,300.

After the institution of this proceeding to adjudicate Edwin J. Long to be an incompetent, and on the 22d day of January, 1940, a written agreement, retaining appellants to represent Long in defense of the proceeding and agreeing to pay them a fee of $5,000, was purportedly executed by Long. . Pursuant to that

instrument the appellants received $2,500. This amount was paid in installments extending beyond the time that the learned Special Term justice had stated that he would make and enter an order finding Long presumptively incompetent. Such order was entered on February 19, 1940. The appellants received the further sum of $800 on February 26, 1940, in accordance with a second alleged retainer agreement executed, not by the incompetent, but by one Ragno, the incompetent's chauffeur, under a claimed power of attorney. Long was adjudicated an incompetent by order entered on the 6th day of April, 1940, pursuant to the verdict of a jury.

The motion resulting in the order now before us was predicated on the grounds that the moneys were taken at a time when Long was hopelessly and palpably incompetent, and in furtherance of a conspiracy entered into between appellants and Ragno; that the $5,000 retainer agreement was void, not only because of Long's obvious incapacity, but because it was, in fact, a forgery, since Long was physically unable to sign his name at the time; and that the second agreement was void because the power of attorney under which it was executed, even if good when made in 1936, was revoked by the manifest insanity of Long.

The Special Term justice who presided at the trial of the incompetency proceeding and heard all the testimony and had the benefit of personal observation of the incompetent, granted the motion on the ground that at the time the moneys were received Long was, in fact, patently insane and to the knowledge of the appellants. It is unnecessary to review the proof adduced at the hearing, which clearly supports that conclusion, as the sole contention of the appellants here is that the court was without power to make the summary order. In passing, however, brief reference may be made to the report of the special guardian appointed on January 23, 1940, or the day after the alleged making of the first retainer, and whose attempt to interview the incompetent was delayed by appellants until January 30, 1940. His report is to the effect that, at that time, he asked Long a variety of questions inclusive of his name, street he lived on, how long he had lived there, if he knew Judge Brower, and how long he had known Judge Brower. To all of these questions the incompetent's answer was " Yes."

The Special Term justice found, on competent sworn testimony, that at the time the incompetency proceeding was instituted, Long had become a mere " block of wood " and was " utterly devoid of comprehension and understanding " and " his condition was clearly apparent to anyone coming in contact with him." His conclusion was that appellants did not act in good faith, that they were not justified, upon reasonable grounds, in attempting

a defense to the proceedings, much less in taking money from him in the belief that he was competent and capable of transacting his business, and that the opposition was conducted for the benefit of Ragno, if not for themselves.

The direction to repay the moneys taken under the circumstances disclosed by the record in this case was clearly a proper exercise of the power of the court, incident to its summary jurisdiction over its officers. The court acted on the theory that an officer of the court is bound to do no wrong and must act with unquestioned fidelity as well to the court as to his client. In these respects but not beyond them, the power of the court is to be exercised in a summary manner, according to its discretion and judgment. (*Matter of Knapp*, 85 N. Y. 284, 292.) Attorneys " are under the government of the several courts in regard to their behavior to their clients," writes Chancellor WALWORTH in *Merritt* v. *Lambert* (10 Paige, 352, 356). The parties stand on unequal ground and, generally, principles of public policy require care and vigilance on the part of the courts. (*DeRose* v. *Fay*, 3 Edw. Ch. 369; *Starr* v. *Vanderheyden*, 9 Johns. 253.)

If the dictum of McLAUGHLIN, J., in *Matter of Minnesota Phonograph Co.* (148 App. Div. 56; affd. on opinion below, 212 N. Y. 574) and reiterated in *Matter of Bailey* v. *Rutherford* (242 id. 220, 223, 224) is to be construed as stating that the summary jurisdiction of the court is restricted to directing an attorney to pay over money received *for* a client, it is erroneous. Although that is the usual ground upon which summary jurisdiction is invoked, it is by no means the only one. The court will act where moneys have been illegally or wrongfully received *from* a client (*Forstman* v. *Schulting*, 108 N. Y. 110; *Matter of Bucken* v. *Busch*, 203 App. Div. 717; *DeRose* v. *Fay, supra*), as well as for other reasons, where misconduct is presented. (*Matter of Robertson* v. *Clocke*, 18 App. Div. 363; *Merritt* v. *Lambert, supra; Starr* v. *Vanderheyden, supra*.) Indeed, ALLEN, J., states in *Foster* v. *Townshend* (68 N. Y. 203, 205) that " for *any* act inconsistent with his [appellant's] relation to the court as one of its attorneys and counselors, and suitors have sustained damage, the remedy, as well as the punishment, *must* be by summary proceedings, and not by formal action * * *." (Emphasis mine.)

It is, of course, the wrongful behavior or misconduct of the lawyer which is the *sine qua non* of summary jurisdiction. Where no such element is presented and a dispute arises between attorney and client as to the value of the former's services after the client has made a voluntary payment, the latter will be remitted to his civil remedy. (*Matter of Rosenberg*, 263 N. Y. 357; *Matter of*

*Jeffries*, 219 id. 573; *Matter of Hess*, 133 App. Div. 654. Cf. *Matter of Bucken* v. *Busch, supra.*) The distinction between such authority and the present case is that one who takes money from a patent lunatic under the guise of a retainer agreement is guilty of misbehavior and the transaction cannot be deemed a voluntary payment. Such money, the attorney " is in duty bound to turn over to such client." (*Matter of Rosenberg, supra*, p. 361.)

My further opinion is that the right to compel refund in a summary proceeding is unaffected by the fact that the money was taken prior to the formal and final adjudication of incompetency. Lunacy of the client is presented as an issue for determination in a summary proceeding as well as any other issue constituting misconduct. (*Matter of Cartier* v. *Spooner*, 118 App. Div. 342; *DeRose* v. *Fay, supra.*) It is immaterial that, upon election, the committee may have redress by civil action, and that, possibly, before the incompetent himself might recover in such an action, it would be necessary to declare the retainers void. The remedy resulting from the recognition of the relationship of debtor and creditor is not, necessarily, effectual. All judgments are not paid. In any event, the power of the court in a summary proceeding " is quite distinct from any legal rights or remedies of the parties, and cannot, therefore, be affected by anything which affects the strict legal rights of the parties." (*Matter of Grey*, L. R. [1892] 2 Q. B. D. 440, 443.) Such power will be exercised by the court to avert the consequences of wrongdoing and in vindication of its own dignity. (See *Matter of Papa* v. *Rini*, 171 App. Div. 796, and cases cited; affd., 219 N. Y. 575.) In *Matter of Knapp* (*supra*) Judge DANFORTH quotes approvingly from the opinion of MARSHALL, Ch. J., in *Ex parte Burr* (9 Wheat. 531) that such power is " necessary for the preservation of decorum, and for the respectability of the profession."

The rights and duties of the appellants, upon the institution of this proceeding, were clear. When they undertook the defense, they were charged not only with knowledge of the obvious mental condition of the alleged incompetent, but with the nature of the proceeding. If successful in their defense, their remedy was no different from that in any other matter in which they might render professional services. If unsuccessful, their right to demand payment from the committee of the estate, subsequently appointed, and to enforce payment by action, if necessary, cannot be questioned; or, at their election, it was their right to make application in the proceeding to the justice presiding for an allowance from the estate, which application might be granted summarily and in a suitable amount, depending upon the justification for, and merits of, the defense, and the nature and extent of the services rendered.

Under no circumstances, however, may a lawyer be justified in taking from one who is in fact insane money or property under the guise of a so-called retainer agreement to enter a defense to a proceeding brought against him for the purpose of having him judicially declared incompetent to manage and care for his property and estate, and the pendency of such a proceeding may not be deemed a justification for such conduct.

For the foregoing reasons, my opinion is that the order should be affirmed. The observation by RUGER, Ch. J., in *Forstman* v. *Schulting (supra*, p. 113) is applicable here: " It would be a reproach to the law if the court, knowing that one of its officers had money in his hands which had been erroneously taken from a party to the action, could not compel such officer to restore them to the rightful owner."

ADEL, J., concurs with HAGARTY, J.

Order reversed on the law, without costs, and motion denied, without costs.