Van Voorhis, J.
(dissenting). The will and codicil of testatrix have been denied probate by an adjudication of mental incompetency. The will was executed April 9, 1929, the codicil September 13, 1929. The only evidence in the record on which a finding of ineompetency could be based consists of the testimony of two witnesses, now deceased, in a proceeding in 1930 for the appointment of a committee. That proceeding was conducted, be it noted, in the year following the year in which testatrix executed the will and codicil. These witnesses were *315 her brother, John Haydock, and a Dr. Robertson, who was the supervising physician of the private sanitarium to which she had recently been admitted. The question here is whether their testimony can be received under section 348 of the Civil Practice Act. That depends, in turn, upon whether the subject matter of the proceeding for the appointment of the committee in 1930 was the same as the subject matter of this will contest tried in 1954, and whether the parties were the same. ‘ ‘ The common law recognized the right * * * to introduce the testimony given at the former trial or hearing where the second proceeding involves the same parties or their privies and the same issues, this being the best evidence which such case admits. The fundamental reason for permitting evidence of a witness given at a former trial, who is now not available as a witness, to be read in evidence is that the parties had both the right and opportunity of cross-examination at the time such testimony was offered.” (6 Carmody-Wait on New York Practice, § 32, pp. 472-473; Young v. Valentine, 177 N. Y. 347.) This right became limited by section 830 of the former Code of Civil Procedure in 1879, which was amended in 1899. “ Prior to the amendment of 1899, the right to read the testimony of a deceased party or witness taken on the former trial was confined, by the section, to a new trial or hearing of the same action or special proceeding in which the testimony was given. (People ex rel. Byrne v. Brugman, 3 App. Div. 156.) Its scope was enlarged by the amendment of 1899 to extend the right to resort to such testimony to another and independent action or special proceeding between the same parties, where the subject-matter of the new action or proceeding was identical with that in which the testimony of the deceased party or witness was given.” (Deering v. Schreyer, 88 App. Div. 457, 463.) Section 830 of the Code of Civil Procedure, as thus amended, has been carried forward into section 348 of the Civil Practice Act. The reason for the introduction of the verbiage that the “ subject-matter ” shall be the same, was not to change the rule that the issues must be the same so that the incentive shall have existed to cross-examine the witness for the same objective, but to escape the technicality which section 830 of the Code of Civil Procedure had introduced in requiring that the former testimony should have been given in the same action or special proceeding. It no *316 longer has to he on the same canse of action. After the amendment of 1899, the former testimony might have been given in another and independent action or special proceeding provided that “ the subject-matter of the new action or proceeding was identical with that in which the testimony of the deceased party or witness was given.” (Deering v. Schreyer, supra.) The purpose appears to have been to return to the broader common-law rule, which had been narrowed by section 830 of the Code of Civil Procedure as originally enacted (cf. statement, 5 Wig-more on Evidence [3d ed.], § 1387, pp. 92-93 — “ But it is worth noting that usually the effect of the common-law principle would be even broader than the statutes’ terms, and would suffice to admit even where the case is not covered by the phraseology of the statute ”).
In Cohen v. Long Is. R. R. Co. (154 App. Div. 603, 606), it was pointed out after the 1899 amendment that the object was to escape a ‘ ‘ narrow and technical construction ’ ’ and to return to the common law. It was there stated: “ The admissibility in general of evidence given on a former hearing of the same subject-matter between the same parties did not originate with the Code, hut existed at common law long before a Code of Procedure was dreamt of.” (Italics supplied.) What the common-law rule was is thus defined in Varnum v. Hart (47 Hun 18, 25), per Haight, J., later a Judge of this court: “ The rule at common law is, in substance, that if a witness has been examined in a legal proceeding between the same parties, involving the same questions, so that the counsel for either party could have the right to examine and cross-examine, then the evidence of such a deceased witness may he used. (1 Phillips on Ev., 400; n. 100.) ” (Italics supplied.)
The rationale is thus stated by Wigmore: “A testimonial statement may still not satisfy the Hearsay rule even when it has been made before a tribunal or officer at which there was cross-examination, or the opportunity, for the then opponent; because the opportunity must have been an adequate one. Unless the issues were then the same [italics from Wigmore] as they are when the former statement is offered, the cross-examination would not have been directed to the same material points of investigation, and therefore could not have been an adequate test for exposing inaccuracies and falsehoods. Unless, furthermore, the parties were the same in motive and interest, there *317 is a similar inadequacy of opportunity, for the present opponent cannot be fairly required to abide by the possible omissions, negligence, or collusion of the different party, whose proper utilization of the opportunity he has no means of ascertaining ”. (5 Wigmore on Evidence [3d ed.], § 1386.)
Construing section 348 of the Civil Practice Act liberally, so as to avoid the technicalities with which the predecessor statutes had sometimes become limited, it is still necessary that the spirit of the rule shall be observed, which requires that the causes of action shall have sufficient similarity to have furnished an incentive to cross-examine for the same purpose as in the later lawsuit into which the earlier testimony is sought to be introduced. Wigmore has indicated that one criterion is that there shall have been the same property interest to protect in the former litigation (§ 1388, p. 101). There was no similar property interest to protect in this incompetency proceeding, inasmuch as the will was in no way involved.
There was not identity nor even approximation of subject matter between the pending will contest and the inquest before the sheriff’s jury in 1930 which led to the appointment of a committee. The circumstance that notice of the incompetency proceeding was served upon this appellant is irrelevant. This court has recognized that the issues are so different that not even a petitioner in an incompetency proceeding is precluded from asserting the validity of a prior business transaction by the alleged incompetent. Moreover, there is a difference between admitting the fact of an adjudication in an incompetency proceeding, and utilizing the testimony in the incompetency proceeding as independent evidence of lack of testamentary capacity. (Hughes v. Jones, 116 N. Y. 67.) No one present or represented at this inquest was apprised that it was to his interest to sustain or attack the prior testament, nor does it appear that the beneficiaries under this will were even aware of its existence.
Section 1371 of the Civil Practice Act itself establishes an important difference in the issues by providing that in proceedings for the appointment of a committee by reason of lunacy, “ the inquiry with respect to his competency * * * must be confined to the question whether he is so incompetent at the time of the inquiry ”. In this instance, that meant in 1930, after the will and codicil were executed. This section limits testimony *318 to be admitted respecting acts and conversation of tbe alleged incompetent to such as have occurred within two years before the hearing, but such testimony is received only to aid in the determination of the question of incompetency at the time of the inquest by the commissioners and the sheriff’s jury. Even if the jury makes a finding concerning prior incompetency, it is a nullity (Goldberg v. McCord, 251 N. Y. 28; Boschen v. Stockwell, 224 N. Y. 356). The issue in the incompetency proceeding was whether testatrix was incompetent at the time of the inquest in 1930, but not when she executed this will and codicil in the previous year.
The only basis on which the testimony at the inquest could be received upon the will contest, would be that the subject matter was identical and the parties the same so that the incentive as well as the opportunity for cross-examination would have existed upon points material to the will contest. It is apparent that, regardless of what the witnesses testified in the incompetency proceeding concerning Mrs. White’s condition during the two preceding years, no incentive existed on the part of anyone at the inquest to cross-examine with respect to anything except her condition in 1930. There was no occasion to consider her prior condition at all except insofar as it bore upon her competency at the later date.
The issues in the separate proceedings were different in other and deeper respects. The United States Supreme Court had occasion to refer to this question in Keely v. Moore (196 U. S. 38), in reviewing a judgment of the Court of Appeals of the District of Columbia. The court there pointed out that the commitment of a man as a lunatic presents a different issue from whether the alleged incompetent possesses testamentary capacity. The court said (p. 46): “ In this connection exception was taken to the exclusion of the application of James E. Cunningham for the admission of Thomson to the insane asylum, and of the certificate of the two physicians as to his sanity. These were properly excluded, not only because they were unsworn testimony, but because they were given in a different proceeding and upon a different issue. Thomson may have been insane to the extent of being dangerous if set at liberty, and yet may have had sufficient mental capacity to make a will, to enter into contracts, transact business and be a witness. In the case of Leggate v. Clark, 111 Massachusetts, 308, the admission of similar testimony was treated as error. ’ ’
*319 The Supreme Court of Illinois likewise considered the question in Lewandowski v. Zuzak (305 Ill. 612, 614), with the same result, where the court said: “ The proceeding for the commitment of the testator to the hospital for the insane was upon a different issue from that in this case, and the certificate of the physicians was given to the jury without any opportunity for cross-examination by the appellants.”
In Rintelen v. Schaefer (158 App. Div. 477, 483), the depositions of physicians who had examined testatrix in an incompetency proceeding were excluded in a will contest.
The circumstance that in some of these decisions the courts were concerned with the commitment of an insane person rather than the appointment of a committee does not render irrelevant either their underlying thought or their authority. All contracts of a person of unsound mind, made after the appointment of a committee are, to be sure, absolutely void (Wadsworth v. Sharpsteen, 8 N. Y. 388; Matter of Long, 261 App. Div. 456, 458-460), but “ A will stands upon a different footing in some respects, from a contract to be executed inter vivos, in as much as it does not take effect until death has put an end to the commission.” (Wadsworth v. Sharpsteen, supra, p. 396.) It is well established that even after ‘‘ office found ’ ’ by the appointment of a committee, testamentary capacity is not necessarily eliminated. A committee cannot make a will for an incompetent any more than he can sue for divorce; and although one who is wholly incompetent cannot make a valid will, our courts and those of other States have been quick to recognize that the factors are far from being identical which enter into the appointment of a committee and capacity to make a will. In Matter of Williams (24 App. Div. 247), the test of a man’s right to the possession and control of his property was said to depend upon his fitness to manage the common and ordinary affairs of business and of life. Committees have had to be appointed over persons suffering from serious and incapacitating delusions, yet “ The holding of delusions does not in and of itself constitute testamentary incapacity. There may co-exist delusion and a disposing mind. A delusion affects testamentary capacity only when it enters into or controls in some degree its exercise. (Dobie v. Armstrong, 160 N. Y. 584; Middleditch v. Williams, 45 N. J. Eq. 726; Shreiner v. Shreiner, 178 Penn. St. 57.) ” (Matter of Heaton, 224 N. Y. 22, 29, per Collin, J.)
*320 In Dobie v. Armstrong (160 N. Y. 584, 593) this court said: “ A man may even have an insane delusion and yet be able to make a valid will; for the will to be invalid must be the result itself of the delusion ”. Yet the delusion may render him subject to the appointment of a committee.
It is familiar law that even where a person is at times wholly insane, a will may properly be executed during a lucid interval. In numerous cases, wills have been sustained that have been executed during such periods even after committees have been appointed. In Matter of Coe (47 App. Div. 177, 179) it was said: “ In Carter v. Beckwith (128 N. Y. 312) it was held that one who has been judicially determined to be a lunatic, and for whom a committee has been appointed, is incapable of entering into a contract, and any contract be assumes to make is absolutely void. This, however, does not apply to the making of a will (Wadsworth v. Sharpsteen, 8 N. Y. 388, 393; Lewis v. Jones, 50 Barb. 645; Breed v. Pratt, 18 Pick. 115.) The inquisition, however, is prima facie evidence of incapacity. Lucid intervals may be shown, and if during such a period a will is made intelligently and freely it may be established. (1 Jarm. Wills [6th ed. by Bigelow], 37.) ” In the recent case of Matter of Charap (286 App. Div. 1000, affg. 4 Misc 2d 627), a will was admitted to probate after a committee bad been appointed but not discharged.
The point upon this appeal, as it seems .to me, is one which is likely to affect many persons who have suffered or may suffer from mental illness. It goes without saying that the will of any one suffering from mental illness should be admitted to probate only after careful inquiry concerning the mental competency of the testator. Nevertheless, especially in this day and generation, many a person is recognized as being mentally ill who is capable of making a will, nor should testamentary capacity be destroyed, in practical effect, by the testimony taken in a proceeding which has a different object in which the parties in interest are unable or have no incentive to participate. In ruling upon this question it is important to bear in mind that everyone who may stand to benefit from a putative benefactor should not be obliged to intervene, if a proceeding is instituted to declare him incompetent, in order to cross-examine whatever witnesses may be called lest the potential beneficiary be precluded otherwise from laying a foundation for contending that *321 the will was executed while the testator’s mind was lucid prior to the institution of the incompetency proceeding, or that the insanity requiring the appointment of a committee stems from some delusion that has not destroyed testamentary capacity. Those aspects are likely to he irrelevant to an incompetency proceeding, hut they are the heart of a will contest.
Committees of elderly people suffering from senile dementia are frequently appointed. The word “ lunacy ” as used in section 1371 and the other sections of article 81 of the Civil Practice Act includes imbecility arising from old age and loss of memory or understanding (Matter of Preston, 113 App. Div. 732), nevertheless these arteriosclerotic disturbances and other mental illnesses are often in remission, when wills can validly be executed. Even the previous appointment of a committee creates merely a presumption for testamentary purposes that the same mental condition continues, until overcome by satisfactory evidence (Matter of Widmayer, 74 App. Div. 336; Matter of Rice, 173 Misc. 1038, per Foley, S.).
In the instant case, no one saw fit to oppose the appointment of a committee over this woman in 1930. Her brother was the petitioner, and the proceedings, as frequently occurs in such instances, were merely formal. It was apparent at the time of the inquest that she was incapable of attending to the ordinary affairs of business and of life, but there was no occasion to inquire into whether this had deprived her of testamentary capacity at the time of the inquiry let alone during the previous year. The unchallenged testimony of the physician, as well as that of her brother, must have been very damaging to the proponent upon the will contest 24 years later, yet at the time when it was given no one present was interested in ascertaining whether she had been competent to make a will in 1929, or whether, although the appointment of a committee was recognized as being necessary, she was thereby deprived of testamentary capacity. No one then was concerned with upholding or setting aside a previous will; the existence of such a document was neither mentioned nor considered. These witnesses were not cross-examined concerning these vital aspects of the probate of what is now propounded as her last will and testament.
Testimony of testatrix’ brother and of the examining physician similar to that which was introduced at the inquest might have been admissible upon the will contest, if the witnesses had *322 been present and subject to cross-examination upon these aspects of this litigation which were but dimly shadowed then; but unless effective cross-examination is to be foregone — said by Wigmore to be the greatest engine for discovery of truth ever invented — then the decree denying probate to these instruments must be reversed and a new trial granted at which the prior testimony of these witnesses is to be excluded. Respondent’s counsel indicated upon the argument that another trial would also result in denying probate by reason of other evidence not contained in this record. If so, the other evidence should be produced, and a precedent should not be set identifying the subject matter and parties in proceedings for the appointment of committees with the divergent ones in contested probate proceedings. The present issue could not have been and was not presented and tried in the incompetency proceeding. These parties were not represented at the inquest in the person of the alleged incompetent. Neither she nor her special guardian attempted or were called upon to present or to try the issues which would arise in her own will contest. The difference in subject matter is thus effectively described in Corpus Juris Secundum: “ Under some statutes, the mental incapacity [for the appointment of a committee] must amount to insanity, but ordinarily, under the statutes, it is not necessary that the mental incapacity of the subject be such as to come within the strict sense of such terms as ‘ insanity,’ ‘ idiocy,’ or ‘ lunacy;’ or an entire absence of reason, understanding, or memory; or that the subject be violent or dangerous to the safety of the community. As a general rule, it is sufficient if, for any cause, his mental faculties have become so impaired as to make him incapable of protecting himself * * * and where, by reason thereof, he would be liable to be deceived or imposed on by artful or designing persons.” (44 C. J. S., Insane Persons, § 11, subd. b, par. [1], pp. 64M35.) Mrs. White was evidently subject to these infirmities when her committee was appointed in 1930, but, as the language just quoted implies, the criterion is different in important respects from that which determines testamentary capacity, and the beneficiaries under this will should have been allowed a day in court without being concluded by the unchallenged testimony at the inquest addressed to a different phase of testatrix’ personality and capability.
*323 The order appealed from, should be reversed and a new trial granted.
Desmond, Froessel and Burke, JJ., concur with Dye, J.; Van Voorhis, J., dissents in an opinion in which Conway, Ch. J., and Fuld, J., concur.
Order affirmed.